Grafton, }
Jan. 2, 1912. }

### FOGG *v.* BOARD OF EDUCATION OF LITTLETON & a.

The expenditure of school money for the transportation of pupils is a matter within the discretion of the school board; but this discretionary power must be exercised in such manner as will best subserve the interests of education and give to all scholars as nearly equal advantages as may be practicable.

A school board cannot properly decline to furnish necessary transportation for a pupil during any part of the school year, and thereby practically deny him the enjoyment of free education, when the granting of such privilege for at least a portion of the time would afford him substantial benefit and would not materially diminish the advantages accorded other scholars in the town.

PETITION for *mandamus,* to compel the defendants to furnish some means of education for the plaintiff's son, or some means of transporting him to one of the schools maintained in the district. Transferred from the May term, 1911, of the superior court by *Pike,* J., on the plaintiff's exception to the dismissal of the petition.

The plaintiff lives four and one fifth miles from the nearest school, and the defendants decline to convey his son, who is about nine years old. There is but one other scholar in that locality, and she lives upon a different road. If the board were to furnish transportation for the plaintiff's boy, it would be for his benefit alone. It is impracticable to maintain a school in the plaintiff's district, and the board cannot furnish the transportation desired for any reasonable expense, or without the expenditure of funds wholly out of proportion to the amount which could properly be expended per scholar in the district, thereby depriving many other scholars of the advantages they now have.

*Edward J. Cummings* (by brief and orally), for the plaintiff.

*William H. Mitchell* and *Smith & Smith (Raymond U. Smith* orally), for the defendants.

WALKER, J.   "The school board of every district shall provide schools at such places within the district and at such times in each year as will best subserve the interests of education, and will give to all the scholars of the district as nearly equal advantages as may be practicable.   They may use a portion of the school money, not exceeding twenty-five per cent, for the purpose of conveying scholars to and from the schools."   P. S., *c.* 92, *s.* 1.   One contention of the plaintiff is that the last sentence of this statute is mandatory and not permissive, and that upon a true construction of the statute the word "may" should be given the force of "must," when there are scholars who live at a greater distance from an established school than it is reasonable for them to walk.   The argument in effect is that if there is a single scholar who is unable to walk from his home to the nearest school on account of the distance, the school board has no discretion in the matter, but is obliged to transport him to and from school, at an expense, if necessary, not exceeding the statutory limit.   It is said that the object of the statute is to provide for such an arrangement of schools in the town-district as will "give to all the scholars of the district as nearly equal advantages as may be practicable."   But this statutory language necessarily implies that the board is invested with a large discretion in the establishment of schools, and that entire equality of privilege in attending school is not required.   Manifestly if it were, its attainment would be impossible.   The degree of inconvenience which different scholars experience in going to and from school must vary according to the location of their homes.   Some must walk a mile or two, while others are only obliged to walk as many rods.   It might be said that this is a great inequality of privilege, but no one would deny that it is an inequality that could not be avoided in the present system of town schools.   As much inequality of privilege must exist, not alone in this but in many other respects, in providing for public education, it is apparent that a discretionary power must be lodged in some one, or in some board of officials, to determine the numerous questions of convenience and suitability of school advantages, as they arise.   But this discretion is not a captious one; it is not equivalent to unlimited power in the matters

to which it pertains. In the language of the statute, it is such a discretion "as will best subserve the interests of education" in the town, and as will "give to all the scholars of the district as nearly equal advantages as may be practicable."

These limits upon the discretionary power of the board, in regard to the times and places for maintaining schools, doubtless also apply in the decision of questions of transportation. In the original statute authorizing the expenditure of money for the transportation of pupils, it was expressly provided that the money should be "expended under the order and at the discretion of the officers charged with the prudential affairs of the district." Laws 1878, c. 55, s. 4. And the same idea seems to be implied in our present permissive statute upon that subject. But as above suggested, the discretion vested in the school board must be exercised for "the interests of education" and for the "equal advantage" of all the scholars in the town, so far as that "may be practicable." One question, therefore, presented to the school board of Littleton in reference to the transportation of the plaintiff's son was, whether it was practicable in promoting the interests of education in that town to hire a team and a driver to bring him to school in the morning and to carry him home in the afternoon of every school day during the term of perhaps ten or twelve weeks; in other words, whether the money required for that purpose, if so used, would not so far diminish the facilities for general education in the town as to be deemed impracticable for that reason.

If, for instance, the money required to pay for the transportation of one pupil from a remote part of the district might be used to substantially increase the educational advantages of a hundred other pupils in the town, as by adding a week or two to the length of the school year, it is evident that the aggregate educational advantages derived from the public-school system in the district would be enhanced by expending the money in that way. It might appear that it was not practicable to furnish transportation for one scholar, when it would occasion a substantial curtailment of school advantages to all the other scholars in the town, because the interest of the public in the intelligence of the people generally is paramount to the special interest or desire of a single individual. The expense of transporting one scholar might be so much in excess of the average expense of educating all other scholars in the district as to result in a gross and unreasonable inequality of expense and a consequent lowering of the degree of efficiency in all the schools in

the town. Such a result would not "best subserve the interests of education," in its public governmental aspect, and for that reason it might be deemed impracticable to expend the money in that way. The pupils' equality of privilege under the statute is limited or modified by its practicability, which involves a consideration of its effect upon the success of the school system in the district as a whole.

The primary purpose of the maintenance of the common-school system is the promotion of the general intelligence of the people constituting the body politic and thereby to increase the usefulness and efficiency of the citizens, upon which the government of society depends. Free schooling furnished by the state is not so much a right granted to pupils as a duty imposed upon them for the public good. If they do not voluntarily attend the schools provided for them, they may be compelled to do so. P. S., c. 93, s. 6; *State* v. *Hall*, 74 N. H. 61; *State* v. *Jackson*, 71 N. H. 552. While most people regard the public schools as the means of great personal advantage to the pupils, the fact is too often overlooked that they are governmental means of protecting the state from the consequences of an ignorant and incompetent citizenship. "Knowledge and learning generally diffused through a community being essential to the preservation of a free government, and spreading the opportunities and advantages of education through the various parts of the country being highly conducive to promote this end, it shall be the duty of the legislators and magistrates, in all future periods of this government, to cherish the interest of literature and the sciences, and all seminaries and public schools." Const., *art.* 82 [83]. In accordance with this injunction, the state has always maintained for its protection and at great expense a common-school system which long ago became one of the most important governmental agencies.

"The statute in question forms a part of the laws relating to our common-school system, and must be read as a part of those laws. The duty of providing for the education of the children within its limits, through the support and maintenance of public schools, has always been regarded in this state in the light of a governmental duty resting upon the sovereign state. It is a duty not imposed by constitutional provision, but has always been assumed by the state; not only because the education of youth is a matter of great public utility, but also and chiefly because it is one of great public necessity for the protection and welfare of the state itself. In the

performance of this duty, the state maintains and supports at great expense, and with an ever watchful solicitude, public schools throughout its territory, and secures to its youth the privilege of attendance therein. This is a privilege or advantage, rather than a right in the strict technical sense of the term." *Bissell* v. *Davison*, 65 Conn. 183, 190, 191. See, also, *Learock* v. *Putnam*, 111 Mass. 499, 501.

If, as seems to be clear, the fundamental purpose of the public-school system is the protection and improvement of the state as a political entity, the school board of Littleton may have believed that the interest of the public in education as a whole in that town would be unduly or unreasonably sacrificed or retarded by furnishing transportation for the plaintiff's son for the entire school year, or for a whole term. In view of this public or governmental interest, they may have found that it was not "practicable" to incur the expense of such transportation. If a pupil's home is located several miles from a school, in a rough, mountainous, and uninhabited part of the town, it is not probable that the legislature intended that a considerable part of the public-school money should be expended in providing daily conveyance for him to attend school. The inconvenient location of his home is his misfortune, which the state does not attempt to overcome for his benefit by substantially reducing the efficiency of all the schools in town. The rule of equality of advantage in his case prescribed by the legislature would be impracticable, unless the interest of the public in the education of its youth is to be subordinated to the interest of a single individual.

In Massachusetts, towns are authorized by section 15, chapter 25, Revised Laws, to appropriate money "for conveying pupils to and from the public schools, . . . the same to be expended by the school committee in its discretion." In *Newcomb* v. *Rockport*, 183 Mass. 74, it was held that under this statute a town is not obliged to make such an appropriation, and if it does, the school committee is not bound to act. In *Davis* v. *Chilmark*, 199 Mass. 112, the same result was reached. The plaintiff lived with his family on an island upon which no school was kept, situated about four miles from the island of Martha's Vineyard, where there were adequate school accommodations for the plaintiff's children. The court not only held that the town was not obliged to maintain a school on the island inhabited by the plaintiff, but that it was not obliged to furnish transportation for his children to Martha's Vine-

yard for school purposes.    What arrangement, if any, should be made for their education was deemed to be a matter within the discretion of the school committee, as appears from the remarks of the court:    "There are no regular means of communication between the island upon which he has fixed his residence and the main island upon which the public schools of the town are situated; and such communication is often difficult and sometimes impossible. Doubtless the peculiar circumstances here existing might appeal to the discretion of the town or of the school committee, and lead them to make such arrangements as might be found to be reasonably practicable, with perhaps some sacrifice also on the part of the petitioner himself, to facilitate the attendance of his children upon the public schools.    .   .   .    But we can only pass upon the question of law raised by the report.    Petition dismissed."

In Vermont, a similar result has been reached under section 6, No. 20, Acts of 1892, which provides that "said schools shall be within the limits of said town, and at such places, and held at such times, as in the judgment of the board of directors will best subserve the interests of education and give all the scholars of the town as nearly equal advantages as may be practicable; and said school board may use a portion of the school money, not exceeding twenty-five per cent thereof, for the purpose of conveying scholars to and from such schools."    In construing this statute, the court say in *Carey* v. *Thompson*, 66 Vt. 665, 666:    "The directors are authorized by this provision to use a portion of the school money, not exceeding a certain per cent, for the transportation of scholars. The permissive form of the provision is not conclusive as to the nature of the enactment.    It is to be construed as imposing an imperative duty if such was the purpose of the legislature.    That purpose is to be gathered from the language of the act, the nature of the subject-matter, and the ends sought to be accomplished. The end sought here is equality of school privileges; but the statute clearly recognizes the fact that entire equality is impossible of attainment, and that much must be left to the discretion of those in whose hands the administration of the law is placed.    The differences in the number of scholars to be provided for, in the means available for the various demands of the work, in the proximity of schools and the condition of roads, and in the ages and strength of scholars, are such as to induce a belief that absolute rules would be more likely to work injustice than the exercise of official discretion.    We think it was obviously the intention of the legislature

to leave the question of transporting scholars to the discretion of the school directors." It was alleged in the petition for *mandamus* that the directors "have neglected to support a school within two and one fourth miles of the relator's house, and have refused to use any part of the school money of the town for the purpose of conveying his children to and from any school, and have made no attempt whatever to give his children school advantages equal to those enjoyed by the other scholars of the town." These facts were substantially admitted in the answer, but the petition was dismissed for the reason above suggested.

The conclusion cannot be successfully resisted that the plaintiff's son has no absolute right under the statute to be carried to and from school at public expense, though the distance may be too great for him to walk. Both principle and authority support that result. It is a privilege or advantage which may be accorded to him in the discretion of the school board, governed by a due consideration of the interests of the public in the success of the common-school system and the equality of privilege granted to the individual, so far as it is reasonably practicable. The school board cannot legitimately determine the question without taking into consideration these two important facts; one alone cannot furnish the rule for their guidance to the exclusion of the other. And any action on their part upon the subject of the transportation of pupils which shows they have disregarded them or unduly minimized their importance would be illegal and subject to revision. If the expense of transporting a single pupil for some part of the school year would afford him some substantial benefit and at the same time would not unreasonably diminish the schooling advantages of the other pupils in the district, the expense should be incurred. The board could not legitimately decline to furnish him any transportation under those circumstances.

As we understand the reported facts upon which the court denied the petition, the defendants' refusal to furnish transportation for the plaintiff's son was based upon the ground that the expense incident to such transportation would materially diminish the general effectiveness of the town system of education by reducing the amount of money otherwise available for that purpose. But in order to equalize school privileges so far as may be practicable, the legislature has plainly indicated a purpose that a part of the school money should be used for transporting pupils. "One general purpose of the law abolishing school districts was to gather the

children together into larger schools where they might receive better instruction for longer terms. The conveyance was intended as a substitute for school accommodations in a neighborhood where the scholars were too few to render the maintenance of a separate school reasonable or profitable." *State* v. *Hall, supra,* 63. Money expended for the conveyance of a pupil, which does not unduly or substantially diminish the general school advantages of the town, should be so expended; for that was the evident intention of the legislators in providing for such an equality of school advantages as is practicable.

The plaintiff lives a little over four miles from the school nearest to his house. It is conceded that it is unreasonable to expect or require his boy to walk that distance to attend school, and that the plaintiff is not obliged to convey him to school. The only objection raised by the defendants to providing conveyance as authorized by the statute is the expense. But it is apparent that the expense for a few weeks during the year would not substantially decrease the schooling advantages of all other scholars in the town, while it would afford the plaintiff's son some opportunity for acquiring an education. It may not be expedient to afford him advantages equal to those enjoyed by other scholars, but there is no valid reason why he should not be accorded such advantages as may be practicable. The action of the board, under the facts disclosed by the case, in practically denying him the means of attending a public school for any part of the school year, is unauthorized and illegal. It was evidently the result of giving too much weight to the interests of education in general, or too little to the equality of advantages granted to the individual scholars, or to both errors combined. As above suggested, both these elements must be duly considered by school boards in determining the question of the transportation of pupils. We are of the opinion that the mere matter of the expense does not justify the board in refusing to furnish any transportation for the plaintiff's son during any part of the school year.

It may be that the petition ought to have been brought in the name of the son instead of the father; if so, the defect can be remedied by an amendment.

*Exception sustained.*

All concurred.