IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

## WESTERN DIVISION.

---

### JACKSON, APRIL TERM, 1915.

---

CROSS *et al. v.* FISHER *et al.*[*]

(*Jackson.* April Term, 1915.)

1. SCHOOLS AND SCHOOL DISTRICTS. Consolidation of schools. Discretion of officers. Statute.

Under Acts 1913, ch. 4, providing generally for the consolidation of schools, the public transportation of pupils, and the employment of supervisors, the consolidation of schools is not required, but is merely permitted, and the question how the law shall be administered in such respect is left to the discretion of the county board of education. (*Post, p.* 39.)

Acts cited and construed: Acts 1913, ch. 4, 23, sec. 2; Acts 1873, ch. 25; Acts 1891, ch. 132; Acts 1907, ch. 236, sec. 10, subsec. 4; Acts 1909, ch. 264, sec. 3.

Constitution cited and construed: Art. 2, sec. 17; Art. 11, secs. 8, 12.

Case cited and approved: Leeper v. State, 103 Tenn., 500.

---

[*]For cases passing upon duty of public to furnish free transportation to pupils, see note in 37 L. R. A. (N. S.), 1110.
As to the right to use school money to transportation of pupils, see note in 38 L. R. A. (N. S.), 710.

2. **SCHOOLS AND SCHOOL DISTRICTS.** Transportation of pupils. Statute. Constitutionality.

Acts 1913, ch. 4, sec. 2, providing for the transportation of children residing too far from a school to attend otherwise, if there are enough children so situated, though vesting a discretion in school boards to discriminate reasonably between pupils living in sufficient numbers at a distance from a school to need transportation, and those so living in insufficient numbers, is not violative of Const. art. 11, sec. 12, setting apart the interest on the common school fund for the equal benefit of all the people, since such section must be construed with section 8 of the same article, providing that the legislature shall not pass any law for the benefit of individuals inconsistent with the general law of the land, nor any law granting to any individual rights or exemptions other than such as may be extended by the same law to any member of the community who can bring himself within the law, for while, by necessity, children of some citizens resident at a distance from the schools may be deprived of the transportation extended to others, nevertheless such citizens can bring themselves within the law by changing residence. (*Post, p.* 39.)

Acts cited and construed:  Acts 1913, ch. 4.

Constitution cited and construed:  Art. 11, secs. 8, 12.

Case cited and approved:  Fogg v. Board of Education, 76 N. H., 296.

Case cited and distinguished:  Carey v. Thompson, 66 Vt., 665.

3. **SCHOOLS AND SCHOOL DISTRICTS.** Consolidation of schools. Discretion of board. Abuse. Remedy.

If a county board of education, acting under Acts 1913, ch. 4, providing for the consolidation of schools, the public transportation of pupils, and the employment of supervisors, in consolidating certain schools into one had ignored all reasonable rules, acting in an arbitrary manner, so as to abuse its discretion, by disregarding the wishes, welfare, and interests of the taxpayers of the district, the action of the officials would have been proper subject for correction by injunction because of abuse of power. (*Post, p.* 44.)

Cross v. Fisher.

4. **SCHOOLS AND SCHOOL DISTRICTS. Officers. Constitutional and statutory provisions. "County officers." "Employee."**
Acts 1913, ch. 4, sec. 3, giving boards of education authority to employ supervisors of schools, whose duty shall be to assist county superintendents in the organization, gradation, and supervision of schools, etc., and to pay them out of the respective · school funds of counties, etc., does not violate Const., art. 11, sec. 17, providing that no county office created by the legislature shall be filled otherwise than by the people or the county courts, since the appointees contemplated by the act are not "county officers," but mere "employees." (*Post*, p. 45.)
Constitution cited and construed:    Árt. 11, sec. 17.
Case cited and approved:    Prescott v. Duncan, 126 Tenn., 106.

FROM WEAKLEY.

Appeal from the Chancery Court of Weakley County —Colin P. McKinney, Chancellor.

Maiden & Maiden, for appellants.

Lewis & Garrett and H. H. Barr, for appellees.

Mr. Justice Fancher delivered the opinion of the Court.

The bill in this cause was filed by certain citizens, taxpayers, and patrons of the schools in the nineteenth civil district of Weakley county. The defendant Syl Fisher is the county superintendent of public instruction, and the other defendants are members of the county board of education of said county. The bill attacks the validity of chapter 4 of the Acts of the

132Tenn.3

regular session of the Tennessee legislature of 1913, charging that it violates certain provisions of the State constitution. The act in question is as follows: "An act to be entitled 'An act to improve the public school system of the State by authorizing boards of education to consolidate schools, provide for the public transportation of pupils, and to employ supervisors.'

"Section 1. Be it enacted by the general assembly of the State of Tennessee, that whenever it shall appear to the county board of education, or the county high school board of education, in any county of the State, that the efficiency of the public schools would be improved thereby, said boards of education shall have full power, and are hereby granted authority, to consolidate two or more schools.

"Sec. 2. Be it further enacted, that whenever, by reason of such consolidation, a sufficient number of children is situated too far away from such schools to attend without transportation, said boards of education are hereby authorized and empowered to make provisions for the transportation of said pupils that reside too far away from said schools to attend without transportation, and to pay for same out of the respective public school funds of the county in which such children reside.

"Sec. 3. Be it further enacted, that said boards of education are hereby given authority to employ supervisors of schools, whose duties shall be to assist county superintendents of public instruction in the organiza-

Cross v. Fisher.

tion, gradation, and supervision of public schools of the county, and the organization of industrial work, and to pay for same out of the respective public school funds of the county: Provided, that such supervisors shall be persons of known ability to supervise the work of other teachers, and shall have the equivalent of a high school education: Provided, further, that supervisors of elementary schools shall hold an elementary certificate of the first grade, and supervisors of high schools shall hold a high school certificate of the first grade.

"Sec. 4. Be it further enacted, that all laws or parts of laws in conflict with this act be, and the same are, hereby repealed, and that this act take effect from and after its passage, the public welfare requiring it."

The bill in substance charges that the defendants pursuant to said act had abolished the four public schools of said district, known as the Hopewell School, Parish School, Chestnut Grove School and the Galloway School, and had ordered a consolidation of said schools into one central school, to be located at or near the Hopewell School, where said board intended to construct a large school building at public expense; that the board was proposing to furnish transportation for the children belonging to said district schools who lived too far away from the central school to attend otherwise. It further charged that this consolidation was detrimental to the interests of the patrons and children of the schools because of the fact that a number would be removed a considerable distance

from the school, and that the action of the board was arbitrary and an abuse of power.

The act of 1913 was attacked as violative of the following sections and articles of the State constitution:

(a) Section 12, article 11, of the constitution, because it is alleged that said act authorizes the destruction of equal benefits guaranteed to all the people by said section of the constitution.

(b) Section 8, article 11 of the constitution, because it is alleged that benefits and privileges are conferred upon certain children and patrons which are or may be withheld from certain children and certain patrons; that it confers special rights, privileges, and immunities on some, and withholds such rights and privileges from others.

(c) Section 17, article 2, which ordains that no bill shall become a law which embraces more than one subject, that subject to be expressed in the title.

(d) That said act is void and unconstitutional for the reason that it undertakes to delegate legislative power to the county board of education.

(e) That said act is void for uncertainty and vagueness, in that it does not provide for the transportation of all children who reside too far away from the consolidated schools to attend, but only makes provision for transportation in case where the numbers so residing too far away to attend said schools are sufficient.

The decree of the chancellor holds that the said chap ter 4 of the Acts of 1913, is a valid and constitutional statute.

The decree recites that the complainants, by written agreement filed in the cause and by statement of their solicitors at the bar of the court, admitted that the facts did not warrant complainants' relief on the ground that the abolition and consolidation of said schools and providing of transportation was arbitrary, capricious, and an abuse of power; the court decreeing upon said agreement that the action of the said board was within its jurisdiction and power, and not arbitrary, capricious, and an abuse of power.

The decree orders the dismissal of the bill, taxing complainants with the costs, from which the complainants appealed to this court.

The decree itself provides that only certain parts of the record shall be copied in the transcript, "it being admitted that there was sufficient evidence to sustain the decree as to facts."

The first assignment of error is subdivided. Subdivision A thereof attacks the act of 1913 on the ground that it violates section 12, article 11, of the constitution. This is the portion of our constitution applying to our system of public schools and the fund called the common school fund, and provides that the interest from this school fund shall be inviolably appropriated to the support and encouragement of common schools throughout the State, and for the equal benefit of all the people thereof.

Subdivision B under the first assignment attacks the act of 1913 on the ground that it violates section 8, article 11, of the constitution, which provides against

granting to any individual or individuals rights, priv-ileges, immunities, or exemptions other than such as may be by the same law extended to any member of the community who may be able to bring himself with-in the provisions of such law, and against the passage of any law for the benefit of individuals inconsistent with the general laws of the land.

The insistence in the present case is that the consoli-dation of these schools will work a hardship on some of the patrons so far removed that is not common to others, and that it will confer benefits upon some to the exclusion of others. It may be here stated that any location of schools will necessarily bring about the benefit of close proximity to the schools of some patrons which it would be impossible in any practical sense to confer upon others in the same degree. There is no such thing as absolute uniformity of benefits in this regard.

The public school system of the State has been placed under the control of the legislature for the general benefit of all the people of the State, and not primarily, but incidentally, for the benefit of the pupils. In any practical operation of the school laws under the con-stitution, these equal benefits or opportunities cannot possibly be given to each individual. In some portions of the State that are sparsely populated, schools are necessarily placed farther away from some children than in some other portions, and in fact there are some out of the way places where the schools are a consid-erable distance away.

It was held in *Leeper* v. *State,* 103 Tenn., 500, 53 S. W., 962, 48 L. R. A., 167, that public schools are owned and maintained by the State, and the State may pre- scribe the terms and conditions upon which pupils may enter them, except that it cannot disregard the con- stitutional injunction, "Tuition shall be without charge and equally open to all."

Necessarily, matters of this kind have to be placed in the hands of administrative officers and a discretion reposed in them as to the location of schools. The consolidation of schools is not required by this act. It is only permitted, and left to the sound discretion of the school officials of a given county as to how the law shall be administered in this respect. Undoubtedly in many instances benefits can be derived by the consolidation of schools. In fact, the consolidation of schools was permitted before this act, namely, under Acts 1873, ch. 25, Acts 1891, ch. 132, and also Acts 1907, ch. 236, sec- tion 10, subsection 4.

The transportation of pupils where they are removed some distance from the school is also authorized under the Acts 1909, ch. 264, section 3, as amended by chapter 23, section 2, Acts 1913.

But it is said that the act in question violates the constitution because it only provides for the trans- portation of children who reside too far away from the school to attend without transportation, in case there is a sufficient number of children so situated. This section of the act is as follows:

"Be it further enacted, that whenever, by reason of such consolidation, a sufficient number of children is situated too far away from such schools to attend without transportation, said boards of education are hereby . . . empowered to make provisions for the transportation of said pupils that reside too far away from said school to attend without transportation, and to pay for same out of the respective public school funds of the county in which such children reside."

The objection made to that part of this act which provides for transportation of children is to the effect that, in the process of consolidation of schools, some of the children may live too far away to attend such schools without transportation, and may be denied transportation because there is not a sufficient number in a given place or locality, and that this act on its face recognizes the right of a board to deny transportation to some.

It is further said that all people cannot live near schools nor transportation lines, and therefore it will not do to say that all citizens may or can bring themselves within a situation where they can enjoy the benefits of transportation under the act.

Counsel for the school board, upon the other hand, take the position that a proper construction of the said act of the legislature is that the legislators did not intend by such consolidation to deprive any children of transportation who live too far away to attend otherwise; that the law properly construed, means that the

Cross v. Fisher.

board is given authority to provide transportation of pupils without discrimination.

We think a proper construction of the act is that it does give the board a discretion in the matter. Section 2 of the act provides that, where a sufficient number of children reside too far away from such consolidated schools to attend without transportation, the said boards are authorized and empowered to make provision for their transportation. The legislature evidently did not mean to provide transportation in cases where isolated families or children reside so far away from the schools that it would be impracticable to furnish transportation. The purpose of the act was to give the board of education power to discriminate in a reasonable manner, if necessary.

The question then arises: Will this discrimination, or authority in the act to discriminate, subject this section of the act in question to the constitutional objections pointed out?

Section 12 of article 11 of the constitution sets apart the interest on the common school fund to be used for the equal benefit of all the people of the State. But this does not mean that the schoolhouses shall be equally distant from every home, because that is impossible.

The inhibition against class legislation is clearly defined in section 8, article 11, of the constitution, and the provision in section 12 of said article must be read in connection with the provisions of section 8.

The latter section provides that the legislature shall have no power to suspend any general law for the ben-

efit of individuals inconsistent with the general laws of the land, nor to pass any law granting to any individual or individuals rights, privileges, immunities, or exemptions other than such as may be by the same law extended to any member of the community who may be able to bring himself within the provisions of such law.   So it is that, if any citizen may be able to bring himself within the provisions of a law, there is no discrimination within the meaning of the constitution.

Under section 2 of the said act there is no provision inconsistent with this requirement of the constitution, because any member of a community may be able to bring himself within the provision of the law.

Statutes providing for schools and transportation of scholars have been construed in other States.   In Vermont a statute was passed upon which provided that the school board might use a portion of the school money, not exceeding twenty-five per cent., for the purpose of conveying scholars to and from schools.   The schools were to be located at such places and held at such times as in the judgment of the board of directors would best subserve the interests of education and give the scholars of the community as nearly equal advantages as might be practicable.   It was said by the court in a mandamus suit filed against the school directors to compel them to furnish transportation for petitioners' children under this statute:

"The end sought here is equality of school privileges; but the statute clearly recognizes the fact that entire equality is impossible of attainment, and that

Cross v. Fisher.

much must be left to the discretion of those in whose hands the administration of the law is placed. The differences in the number of scholars to be provided for, in the means available for the various demands of the work, in the proximity of schools and the condition of roads, and in the ages and strength of scholars, are such as to induce a belief that absolute rules would be more likely to work injustice than the exercise of official discretion. We think it was obviously the intention of the legislature to leave the question of transporting scholars to the discretion of the school directors." *Carey* v. *Thompson*, 66 Vt., 665, 30 Atl., 5.

In another case to compel conveyance for a school boy who lived four miles from school, under an act authorizing the district board to provide schools and transportation, it was held that the board had a discretion both as to the location of the schools and periods when they should be taught, and also as to furnishing transportation; that this was not a captious discretion, but such an one as would best subserve the interests of education, and as would give to all the scholars of the district as nearly equal advantages as might be practicable; that the pupil's equality of privilege under the statute is limited or modified by its practicability which involves a consideration of its effect upon the success of the school system as a whole; that free schooling furnished by the State is not so much a right granted to pupils as a duty imposed upon them for the public good; that the fundamental purpose of a public school system is the protection and im-

provement of the State as a political entity; that, while
the boy had no absolute right under the statute to be
carried, it was held that, with due consideration given
the interests of education in general and to the equal-
ity of advantages to the individual, it was the duty
of the board in that case to furnish transportation
during a part of the school year. *Fogg* v. *Board of
Education,* 76 N. H., 296, 82 Atl., 173, 37 L. R. A. (N.
S.), 1110, Ann. Cas., 1912C, 758.

Our Acts 1913, ch. 4, should be construed to mean
that a discretion is given the county board of education
to consolidate schools and to determine when, by rea-
son of such consolidation, a sufficient number of chil-
dren are so situated that they should be furnished
transportation, and in doing so to consider, not only
the right of individuals, but also the public good.

And, so construing the act in question, it is not un-
constitutional in any respect.

The bill charges that the county board of education
had acted in an arbitrary manner, and in a way that
would work injustice to complainants and a large num-
ber of patrons, and deny them school privileges, be-
cause a large number live too far away from the central
school ordered to be provided, and so situated as to
render transportation impracticable.

It was charged that defendants were ignoring the
rule of convenience and disregarding the wishes, wel-
fare, and interest of the taxpayers and patrons of said
district, and that the acts of the defendant complained
of were arbitrary, and an abuse of power, if such power
existed.

Cross v. Fisher.

It was also charged that no benefits would be derived by this consolidation, that the term would not be increased, and that no other or different curriculum could be taught in the consolidated school from that taught in the schools as at present constituted and located.

If these charges were sustained by the proof, the action of these officials might be enjoined because of an arbitrary and hurtful abuse of power. But the agreement is made of record that the facts do not warrant complainants' relief on these grounds, and the suit must fail upon the facts of the case.

It is insisted that the act in question provides for supervisors to aid the county superintendent, and that this is equivalent to providing an assistant to that officer, and that this provision confers upon the county board of education the authority to elect an assistant superintendent. This provision of the statute gives authority to employ supervisors of schools as an aid to the county superintendent in the work of organization, gradation, and supervision of the public schools, together with the organization of industrial work, and it is made their duty to supervise the work of teachers.

By section 17, article 11, the constitution provides that:

"No county office created by the legislature shall be filled otherwise than by the people or the county court."

But are these supervisors county officers? No fixed salary is provided for them, and they hold according

to no term of office. They are employed in the discretion of the board of education.

In Prescott v. Duncan, 126 Tenn., 106, 148 S. W., 229, this court was called upon to determine whether certain appointees of the board of county commissioners were officers within the meaning of said section of the constitution. An act of the legislature applying to Shelby county provided for the appointment by these commissioners of a jail physician, superintendent of county morgue, superintendent of emergency hospital, physician of insane asylum and workhouse, jail engineer, a janitor; an engineer, an electrician, a policeman for the courthouse, a night watchman, and such subordinate help as may be necessary in order to properly conduct the affairs of the county, and these were to receive salaries not to exceed certain amounts.

It was held that the positions provided for were not county officers within the meaning of this section of the constitution, but were employees merely.

The supervisors provided for under the act now in question are only employees to act as aids or assistants in the public school work. There are many subordinate positions and deputies in the conduct of public affairs. It was evidently not intended by the makers of the constitution that all the subordinates and assistants should be elected by the people or the county court.

Other questions were disposed of orally. The court was of opinion that these other questions did not involve any new principle or new application of an old principle of law.

The decree of the chancellor is affirmed.