# JANEWAY v. STATE BOARD OF CHIROPRACTIC EXAMINERS et al.—231 S. W. (2d) 584.

Eastern Section.   Decided March 14, 1950.

Petition for Certiorari denied by Supreme Court, June 9, 1950.

Frank N. Bratton, of Madisonville, for appellant.

B. B. Gullett, of Nashville, for appellee.

McAMIS, J.  By his appeal, Dr. Donald L. Janeway seeks a reversal of the Chancellor's decree refusing to annul and supersede on certiorari an order of the State Board of Chiropractic Examiners revoking his license as a practitioner of that art.

The primary insistence is that the Chancellor under the facts as found gave an unwarranted construction and application to Code Section 7021 providing, in part, as follows:

"7021.  License revoked, not renewable.—(a) The board of examiners may refuse license or suspend or revoke the same for any of the following causes:

"(1)  The presentation to the board of any diploma, license or certificate illegally or fraudulently obtained, or

one from an institution which is not reputable, or any unrecognized or irregular institution or state board, or the practice of any fraud or deception.

"(2) The commission of a criminal operation, or the conviction of a felony involving moral turpitude, chronic or persistent inebriety, drunkenness, or confirmed drug habit.

"(3) The employment, either directly or indirectly, of handbills, posters, circulars, cards, signs, stereopticon slides, motion pictures, telephone, radio, newspapers, lectures, or any kind of printed or written publications or any other device for the purpose of unlawful, false or misleading advertising. . . .

". . . Charges may be preferred to the board against the holder of certificate to practice Chiropractic in said state for fraud or deceit in securing such certificate, or that the holder thereof no longer possesses a good moral character, or that he or she has been convicted of a violation of any law of the state, or that he or she solicits patients through an agent, or that he or she is addicted to the use of narcotic drugs, or in any way or manner is guilty of making false, fraudulent, misleading, extravagant or grossly improbable claims or statements as to the efficiency or value of the science of practice of chiropractic in the cure or treatment of any disease or group of diseases, *or in any way is guilty of deception or fraud in the practice of chiropractic,* or has violated any of the provisions of this act." (Emphasis ours.)

The facts upon which the Board acted are undisputed and are concisely summarized by the Chancellor in his opinion from which we quote:

"On the 19th day of October 1940, Donald L. Janeway was issued License No. 615 to practice Chiropractic in the State of Tennessee. Thereafter, he opened an office in Athens, McMinn County, Tennessee, for the purpose of practicing this art. Dr. Janeway was not licensed in any other branch of the healing arts.

"In the summer of 1947, Mrs. Sylvia Shearlin of Athens, Tenn., went to see Dr. Janeway in his office, where he examined her for female trouble. In November she started going to see him regularly, at which time he made an X-ray of her, or caused one to be made, after which he pronounced the patient's troubles as a partial stroke or paralysis in the bowels. The patient continued going to see Dr. Janeway during November, December and January, until she became confined to her bed on January 20th. Part of this time she went every day, some of the time three times a week and finally two days a week. Mrs. Shearlin was given colonic irrigations by Mrs. Janeway under directions of Dr. Janeway. He also gave her shots, several of them, by hypodermic injections and gave her medicines in liquid and capsule form which he delivered to her in his office and at her home, which medicines she took internally. In addition thereto, Dr. Janeway performed an operation and removed from her vagina or womb what he called a tumor. When Mrs. Shearlin became confined to her bed in January 1948, the doctor continued to visit her, the first day three times, administering shots in the arm and hip and also prescribing liquid medicine and pills which he left with her.

"The patient discussed with Dr. Janeway the possibility of pregnancy and she was always assured that she was not pregnant but was experiencing change of life. On the 6th of July following, in a private home

in Harriman, Tennessee, she gave birth to a baby boy. The witness testified that she paid Dr. Janeway for his services some $200.00.

"In August 1947, Mrs. M. L. Bandy, of Athens, visited Dr. Janeway at his office in Athens complaining with her stomach and back. Her trouble was diagnosed as an irritated stomach and intestines and she was given some medicine in liquid form. The patient was also X-rayed.

"Conceiving that Dr. Janeway has been guilty of conduct violative of provisions of the Act creating the Board of Chiropractic Examiners, Sec. 7009 et sequa, he was notified to appear at 10:00 o'clock A.M. on the 7th day of October 1948, before the Board of Chiropractic Examiners, Hamilton County Court House, Chattanooga, Tenn., and show cause why his license should not be revoked. After a hearing he was found guilty and his license was revoked."

The case was heard by the Chancellor on a transcript of the evidence before the Board, upon the petition for certiorari, the answer of the Board and upon an intervening petition filed by the State Board for the Healing Arts, created by Chapter 9, Acts of 1947, to which Dr. Janeway filed a demurrer and, after his demurrer was overruled, an answer in which he traversed all of the allegations of the petition and reiterated his insistence that the petitioning Board had no right to intervene.

Dr. Janeway did not testify and it is not claimed that his activities were authorized by his license as a chiropractor under Code Section 7013 defining the art as "the science of palpating, analyzing, and adjusting the articulations of the human spinal column by hand." It is insisted, however, that the Act is definitive and not prohibitive and, since it does not expressly prohibit any of

the activities in which Dr. Janeway engaged, the Board exceeded its authority and acted illegally in revoking his license. In brief, it is said the Board assumed a legislative prerogative by creating upon its own initiative and authority a ground for revocation and that the action of the Board in so doing destroys a property right in violation both of the constitution of the State of Tennessee and of the United States. It is further insisted that in any case the record fails to show that Dr. Janeway was not licensed to engage in the practice of medicine.

We consider first the contention last mentioned. There is nothing in the record to indicate that this question was ever raised or considered either by the Board or by the Chancellor. On the contrary, it is clearly indicated that the only issue at both hearings was the right of the Board to discipline a chiropractic licensee for engaging in activities reserved to the medical profession. Dr. Janeway was ordered to show cause why his license should not be revoked for such activities and one of the averments of the answer filed by the Board in the Chancery Court was that he did not have a license to practice medicine. In the face of that charge, he made no effort to justify his activities on that ground and we think he should be confined, on appeal, to the issues and the theory upon which he elected to have his rights determined before the Board and before the Chancellor.

The right to practice a lawful profession is a property right of which one cannot be illegally deprived. State Bd. of Medical Examiners v. Freidman, 150 Tenn. 152, 263 S. W. 75; Prosterman v. Tennessee State Board of Dental Examiners, 168 Tenn. 16, 22, 73 S. W. (2d) 687. But a license to practice a profession

affecting the welfare of the public and, therefore, subject to the police power of the state is not a contract entitling the holder to continue the practice of his profession unrestricted and unregulated. State Bd. of Medical Examiners v. Freidman, supra. The Legislature unquestionably has the right in the exercise of the police power of the state to set up boards to investigate the practice of such a profession and to endow such boards with the right and duty to revoke for good cause a license previously granted.

■■ The power so delegated, however, can involve only a discretion as to when a proper occasion exists for executing the power. It cannot extend to the making of a new law. State ex rel. Llewellyn v. Knox County, 165 Tenn. 319, 331-332, 54 S. W. (2d) 973. And to avoid a violation of this principle we think it must be said that a revocation of a license to practice a lawful profession cannot be predicated on acts or conduct not specified in the statute or embraced within its general terms. See to that effect Graeb v. State Medical Examiners, 55 Colo. 523, 139 P. 1099, 47 L. R. A., N. S., 1063.

■ This does not mean, however, that in addition to providing specific grounds for revocation such boards may not be validly granted the power to revoke upon general grounds, which, by common understanding and universally accepted standards, are regarded as dishonorable, disreputable or incompatible with the honest practice of the licensed profession and the public welfare. For example, charges involving such general grounds as "unprofessional", "dishonorable" or "immoral" conduct and words of like general import in connection with the practice of the profession of medicine are frequently made the predicate for revocation of a license to practice

that profession. See Bell v. Board of Regents, etc., 295 N. Y. 101, 65 N. E. (2d) 184, 163 A. L. R. 900; Anno. 163 A. L. R. p. 909; 41 Am. Jur. 175.

We think the Legislature, after laying down specific grounds for the guidance of the Board, intended by the Act here under consideration to confer upon it also the power to revoke the license of a chiropractor whose activities were found to be unprofessional or subversive of the public interest and welfare. It did so, in our opinion, by authorizing the Board to revoke the license of a practitioner who "in any way" has been "guilty of deception or fraud in the practice of chiropractic." This language, while confined to activities occurring in connection with the practice of the profession of chiropractic, is general in scope and meaning. Can it be supposed that one who under his license as a practitioner of chiropractic as above defined purports to engage in the practice of medicine and even of surgery, as shown in this case, and exacts a fee for such "services", has not been guilty of "deception and fraud in the practice of chiropractic"? The Legislature with good reason has gone to great pains to define the standards for practitioners of medicine and has said that those who meet the standards of that profession can practice it. This clearly implies that others cannot. Dr. Janeway, by the undisputed evidence, has violated this policy.

The public has come to rely upon public regulation and supervision of practitioners of the healing arts and it is a natural assumption that one who assumes to act has been found qualified by competent authority. When a licensed practioner in one field uses his license in another field and the title of "Doctor" to engage in an

illegal practice it is easy to see how the ignorant and credulous could be induced to part with their money on a false assumption. We think the conclusion that such conduct amounts to a fraud and a deception in the practice of the art for which a license has been issued is inescapable. In our view the language of the Act here under consideration is no more subject to attack as being too general than if it has used the language "unprofessional", "disreputable" or "immoral". Fraudulent or deceptive conduct in connection with the practice of a profession must be held to be unprofessional, disreputable and immoral. In practical effect, the terms are synonymous.

Shoults v. Alderson, 55 Cal. App. 527, 203 P. 809, is a parallel case. There a doctor of naturopathy was found guilty of "unprofessional conduct" and his license suspended or revoked upon a showing that he was holding himself out as entitled to practice a healing art for which he was not licensed. And see also Millsap v. Alderson, 63 Cal. App. 518, 219 P. 469.

■ We think the Chancellor correctly held that the evidence sustained a finding by the Board of a violation of the Act though we base our holding upon a somewhat different ground.

This conclusion makes unnecessary the determination of the constitutional questions presented and the question of the propriety of permitting the State Board of Chiropractic Examiners to intervene becomes immaterial to the result.

■ We agree with the Chancellor that Dr. Janeway waived the right to object to the sufficiency of the notice by going to trial before the Board without raising that question.

In conclusion we wish to commend counsel for both parties for the creditable manner in which the case has been argued and briefed.

Affirmed with costs taxed to appellant and surety.

Hale and Howard, JJ., concur.