Charles C. CRAFTON, D.C., Appellant,

v.

STATE BOARD OF CHIROPRACTIC
EXAMINERS, Respondent.

No. 49146.

Missouri Court of Appeals,
Eastern District,
Division Four.

June 25, 1985.

Frank N. Carter, St. Louis, for appellant.

Shelley Ann Woods, Jefferson City, for respondent.

SMITH, Presiding Judge.

Charles Crafton, D.C., appeals from a judgment of the Circuit Court affirming an order of the Board of Chiropractic Examiners suspending appellant's license to practice. The Board's order followed a hearing before the Administrative Hearing Commission. Sec. 161.272 and .292 RSMo 1978 (now Sec. 621.045 and .110 (Supp.1984)). The Commission held that Dr. Crafton had conducted himself in such a way as to justify suspension or revocation of his license. We affirm.

■ Our review is limited to whether the Commission's decision is supported by competent and substantial evidence upon the whole record. *Board of Education v. Shank,* 542 S.W.2d 779 (Mo. banc 1976) [2–6]; *State Board of Registration for Healing Arts v. Masters,* 512 S.W.2d 150 (Mo.App.1974) [1–3]. We therefore examine the evidence in the light most favorable to the decision of the Commission, deferring to its determinations of credibility, and accepting all reasonable inferences which may be drawn from the evidence.

The evidence against Dr. Crafton consisted of the testimony of two investigators, Archanbault and Schwandt. The former testified that in connection with "an investigation concerning fraudulent sick slips, disability certificates" which Dr. Crafton allegedly provided for people who were not disabled or sick, he went to Dr. Crafton's office on February 26, 1979. Archanbault stated to Dr. Crafton that he had skipped work to go to Chicago with friends and needed a sick slip to be paid for that day, Monday, and the previous Friday. He stated several times that there was nothing wrong with him but under prompting from Dr. Crafton finally stated his back hurt. Dr. Crafton began preparing the disability slip and inquired who had referred Archanbault to him. Archanbault gave a fictitious name and when Dr. Crafton was unable to locate the name in his files, he requested Archanbault go into the examining room where a brief treatment was given. Dr. Crafton then gave Archanbault a signed "disability certificate" that he was under Dr. Crafton's care and was totally incapacitated from "2/23/79 to 2/27/79." Archanbault paid Dr. Crafton $10, the doctor's usual charge, and left.

Schwandt went to see the doctor on July 3, 1979, and stated that he needed a sick slip for that day so he could be paid for the July 4th holiday. He did not indicate that he was suffering from any ailments or had any pain or discomfort. Dr. Crafton inquired about prior back problems and Schwandt told the doctor of a prior back ailment in 1974. No examination nor treatment was given Schwandt and the doctor did not physically touch him. Dr. Crafton gave Schwandt a signed "disability certificate" that Schwandt was under Dr. Crafton's professional care and was totally incapacitated from "7/3/79 to 7/5/79." Schwandt paid Dr. Crafton $10 and left.

Before us Dr. Crafton raises two attacks on the Board's order. First he contends that the finding that he engaged in deception and fraud within the meaning of Sec. 331.060.1 RSMo 1978, is not supported by substantial evidence because the testimony of the investigators does not establish that Dr. Crafton knew they were not sick and gave the disability slips to deceive their employers. Secondly, he contends that the use of investigators was an unlawful entrapment and beyond the statutory authority of the Board.

The evidence and inferences therefrom warrant the conclusion that Dr. Crafton, in his position as a chiropractor, executed disability certificates to enable Archanbault and Schwandt to obtain payment from their employers after both men had advised Dr. Crafton that they had no illness or disability and wanted the certificates solely to obtain money to which they were not entitled. Dr. Crafton's execution of the disability certificates for a fee was a "deception or fraud in the practice of chiropractic," warranting suspension or revocation of his license under Sec. 331.060 RSMo 1978. Dr. Crafton's further argument that his conduct was at most "unprofessional" but not deceptive or fraudulent is unsupported by the record. See *Janeway v. State Board of Chiropractic Examiners,* 33 Tenn.App. 280, 231 S.W.2d 584 (1950) [8]. The certificates were issued for the purpose of deceiving an employer which could be presumed to rely upon the integrity of a chiropractic practitioner in determining whether its employee would receive pay for days he had not worked.

In his second point, Dr. Crafton disavows reliance upon entrapment because such a defense requires admission of the wrongful conduct. He asserts, however, that sending two investigators to his office to deceive him was "analogous to an unlawful entrapment." We need not discuss the availability of the defense of entrapment in an administrative proceeding. See *State v. Ward,* 361 Mo. 1236, 239 S.W.2d 313 (en banc 1951) [7, 8]; *Ballew v. Ainsworth,* 670 S.W.2d 94 (Mo.App.1984) [7, 8]; *contra, Patty v. Board of Medical Examiners,* 9 Cal.3d 356, 107 Cal.Rptr. 473, 508 P.2d 1121 (en banc 1973). We find no basis for invocation of entrapment or anything "analogous" thereto in this case. Entrapment in Missouri is no defense where an agent merely offers the accused an opportunity to commit an offense. *State v. Keating,* 551 S.W.2d 589 (Mo. banc 1977) [1]; *State v. Disandro,* 574 S.W.2d 934 (Mo.App.1978) [4–6]. Dr. Crafton was offered an opportunity to participate in a fraud or deception. He accepted the offer.

That is what his license is being suspended for.

We further find no merit to Dr. Crafton's argument that the Board lacked authority to hire investigators. Sec. 331.100 RSMo 1978; 4 C.S.R. 70–2.065; Op.Atty.Gen. No. 35, Grogan 2–14–52.

Judgment affirmed.

SNYDER and SATZ, JJ., concur.