Donald G. BLACKWELL, Respondent,

v.

CITY OF ST. LOUIS, et al., Appellants.

No. 50961.

Missouri Court of Appeals,
Eastern District,
Division Four.

Feb. 3, 1987.

Motion for Rehearing and/or Transfer
Denied March 11,1987.

Application to Transfer Denied
April 14, 1987.

James J. Wilson, City Counselor, Julian Bush & Kathleen A. Gormley, Asst. City Counselors, St. Louis, for appellants.

Jerome A. Diekemper, Janet E. Young, St. Louis, for respondent.

GARY M. GAERTNER, Presiding Judge.

This appeal follows a judgment of the Circuit Court reversing an order of the Civil Service Commission of the City of St. Louis ("Commission") which suspended Donald G. Blackwell for 28 days without pay. The Commission held that Blackwell acted in a manner that violated prohibitions in the City's Charter against political activity. We affirm the Circuit Court's decision.

Our review is limited to whether the Commission's findings are supported by competent and substantial evidence based on the whole record. *Crafton v. State Bd. of Chiropractic Examiners*, 693 S.W.2d 320, 321 (Mo.App., E.D.1985). The reviewing court may not substitute its judgment for that of the Commission and must view the evidence in the light most favorable to that decision. *Stovall v. Civil Service Comm'n*, 636 S.W.2d 364, 366 (Mo.App., E.D.1982).

At the time the charges were brought against him, Blackwell had been a fire fighter for thirty years and had an unblemished record. He held the position of Battalion Chief and also served as President of Local 73 of the St. Louis Fire Fighters, IAF, AFL–CIO ("Local 73"). The charge filed against him alleged that he violated certain provisions of the Charter of the City of St. Louis ("Charter") and the Civil Service Rules ("Rules"). It was alleged that Blackwell had engaged in the type of political activity proscribed for public employees in his position. The charge arose following two local newspaper stories which quoted Blackwell, as Union President, in reference to James Shrewsbury, a St. Louis City Alderman, and Shrewsbury's role in the rejected proposal to increase the St. Louis Fire Fighters Pension Fund.

At the evidentiary hearing before the Commission, it was established that Blackwell had attended the October 5, 1984 Board of Aldermen's meeting at which the Fire Fighters Pension proposal was rejected. He attended in his capacity as Union President and wore civilian clothes. Following the vote on the proposal, he was approached by five or six members of the news media and interviewed for his reaction to the vote. Thereafter, the *St. Louis Post-Dispatch* and the *South Side Journal* each published one article on the subject.

In the *Post-Dispatch* article, which appeared one day after the interview, Blackwell was quoted as saying, "I'm sure the Fire Fighters will be acting in preventing his [Shrewsbury's] election." The *South Side Journal* article appeared five days after the interview and it quoted Blackwell as stating that the Union would "be active in preventing his [Shrewsbury's] re-election." Both articles identified Blackwell only as President of the Fire Fighters Union.

The Commission found Blackwell in violation of Section 19 of Amended Article XVIII of the Charter of the City of St. Louis and Rule XV, Section 2(b) of the Civil Service Rules.[1] Specifically, it concluded that he used his official authority or influence to coerce political action. It stated that, "[t]he public threat against Alderman Shrewsbury that the St. Louis Fire Fighters would work to prevent the re-election of Alderman Shrewsbury is such conduct and speech by a Battalion Chief in the Fire and Fire Prevention Division which is prohibited by the Charter." On appeal, the Circuit Court reversed the Commission's order.

The Commission raises two related points on appeal. Both points question the lower court's ruling that the Commission's order was not supported by competent and substantial evidence.

1. The charter provision and civil service rule provide in identical language as follows:

No person holding a position in the classified service shall use his official authority or influence to coerce the political action of any person or body, or to interfere with any election, or shall take an active part in a political campaign, or shall seek or accept nomination, election, or appointment as an officer of a political club or organization, or serve as a member of a committee of any such club or organization, or circulate or seek signatures to any petition provided for by any primary or election law, or act as a worker at the polls, or distribute badges, color, or indicia favoring or opposing a candidate for election or nomination to a public office, whether federal, state, county, or municipal. But nothing in this section shall be construed to prohibit or prevent any such person from becoming or continuing to be a member of a political club or organization or from attendance upon political meetings, from enjoying entire freedom from all interference in casting his vote, from expressing privately his opinions on all political questions, or from seeking or accepting election or appointment to public office, provided, however, that no active campaign for election shall be conducted by any employee unless he shall first resign from his position.

■ In its first point, the Commission claims that Blackwell's acts following the Board of Aldermen's meeting constituted a use of his official authority and influence to coerce the political activity of subordinate fire fighters, other public officials, and the Board of Aldermen. Such coercion is prohibited conduct under the Charter and Rules. The Commission characterized Blackwell's statement, as reported in the press, as a "threat" which it then found to be synonymous with "coerce."

However, BLACK'S LAW DICTIONARY 234 (rev. 5th ed. 1979) defines coerce as "[c]ompelled to compliance; constrained to obedience, or submission in a vigorous or forcible manner." The prohibited conduct, according to the plain and unambiguous language of the Charter and Rule, is the use of "official authority or influence to coerce the political action of any person or body...." The Commission did not charge Blackwell with actual coercion, intimidation, or pressure of anyone. There is no evidence that Blackwell actually coerced, intimidated, or pressured anyone. Moreover, the record is devoid of evidence to show that Blackwell's official capacity placed him in a position to actually coerce others, by means of discharge, discipline, demotion, transfer or reassignment. The fact that Blackwell held an official position within the Fire Department is not, in itself, sufficient to find coercion. Neither the Charter nor the Rules prohibit the *possibility* of coercion, only the actual exercise of the same.

Further, Blackwell's role at the Board of Aldermen's meeting was well-delineated by the fact that he was there as President of Local 73 to lobby for the increase to the Pension Fund. The reporters testified that they approached him because he was the Union President and identified him as such in their articles. Absent some evidence that Blackwell used his authority or influence as Battalion Chief to coerce someone to political activity, the Commission's finding is unsupported by competent and substantial evidence. *This point is denied.*

The Commission's second point alleges that there was competent and substantial evidence to find that Blackwell engaged in proscribed political activity by "interfering with an election and taking an active part in a political campaign by his threats and action at an impromptu press conference." Initially, we note that the Commission did not rely on these proscribed activities in reaching its decision. Even if the Commission had used these provisions to find fault, its decision would not be supported by competent and substantial evidence.

■ The Charter and Rules proscribe "active" participation in political activity. It is beyond debate that federal, state and local governments may place some restrictions on the political conduct of public employees. *Pollard v. Bd. of Police Comm'rs,* 665 S.W.2d 333, 339 (Mo. banc 1984), *cert denied* 473 U.S. 907, 105 S.Ct. 3534, 87 L.Ed.2d 657 (1985). "The goal is to balance the interest of the employee as a citizen, in exercising first amendment rights, and the interest of the government, as an employer, in promoting the efficiency and impartiality of public services." *Pollard,* 665 S.W.2d at 339; *Ferguson Police Officers Ass'n v. City of Ferguson,* 670 S.W.2d 921, 928 (Mo.App., E.D.1984).

■ The record does not contain substantial evidence that Blackwell either coerced others to political activity or actively engaged in political activity. Where an administrative body's finding is not based on substantial evidence, it is arbitrary and capricious, and cannot stand. *Edmonds v. McNeal,* 596 S.W.2d 403, 407 (Mo. banc 1980). This point is denied.

■ Finally, Blackwell filed a motion to dismiss, which was taken with the case, based on the contention that the judgment of the Circuit Court is not appealable, since judgment has not been rendered on his other three counts. The trial court made no order that the judgment was either final or interlocutory. We turn to Rule 81.06, V.A.M.R.,[2] to determine the answer. It is

---

**2.** Rule 81.06 reads in pertinent part: "When a separate trial is had before the court without a

jury of claims arising out of the same transactions, occurrences or subject matter as the other

true that Count I is related to the other counts in that they all stem from Blackwell's response to the press following the aldermanic meeting of October 5, 1984. However, Count I is a petition to review the Commission's administrative decision. The remaining counts are: a declaratory judgment asking that the prohibitions be declared unconstitutional; an action for damages and injunctive relief based on alleged deprivation of federally protected rights; and an action for damages and injunctive relief based on the allegation of unlawful discrimination for participation in labor organization activities. Since the issue in Count I is entirely different from those in the remaining counts, the disposition of Counts II, III, and IV is not dependent on the determination of the petition for review. We conclude that the judgment on Count I was a final judgment for purposes of appeal. The motion is denied. *See Crenshaw v. Great Central Ins. Co.,* 527 S.W.2d 1, 3 (Mo.App., E.D.1975); *Hauser v. Hill,* 510 S.W.2d 765, 766 (Mo.App., E.D. 1974).

The judgment of the trial court is affirmed.[3]

STEPHAN and SIMON, JJ., concur.

---

3. The City of St. Louis joined the Commission in this appeal. It raised two points, the first of which alleged that there was substantial evidence to support the Commission's findings. See text above for our disposition of this point. Its second point claims that the Commission erroneously disregarded its rules by imposing a 28–day suspension when the rules require dismissal for the type of violation charged against Blackwell. Having found that Blackwell did not violate the Charter or Rules, we need not address this issue. *But see Stovall v. Civil Service Comm'n,* 636 S.W.2d 364, 367–68 (Mo.App., E.D.1982) (the Commission may modify a disciplinary action so long as the modification falls within the list of available alternatives under the Rules).

claims stated or joined in the case the judgment entered shall not be deemed a final judgment for purposes of appeal within the meaning of Section 512.020, RSMo, unless specifically so designated by the court in the judgment entered. However, when a separate trial is had before the court without a jury of an entirely separate and independent claim unrelated to any other claims stated or joined in the case, then the judgment entered shall be deemed a final judgment for purposes of appeal within the meaning of Section 512.020, RSMo, unless the court orders it entered as an interlocutory judgment to be held in abeyance until other claims, counterclaims, or third-party claims are determined."