# IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

FILED

January 9, 1998

Cecil W. Crowson
Appellate Court Clerk

TENNESSEE DEPARTMENT OF )
HEALTH, DIVISION OF HEALTH )
RELATED BOARDS and )
THE BOARD OF MEDICAL )
EXAMINERS, )
                            )
      Plaintiffs/Appellees, )
                            )      Davidson Chancery
                            )      No. 95-144-III
VS. )
                            )      Appeal No.
                            )      01A01-9511-CH-00540
W. DWIGHT FRISBEE, M.D., )
                            )
      Defendant/Appellant. )

APPEAL FROM THE CHANCERY COURT FOR DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE ROBERT S. BRANDT, CHANCELLOR

For the Plaintiffs/Appellees:

John Knox Walkup
Attorney General and Reporter

Michelle K. Hohnke
Assistant Attorney General

For the Defendant/Appellant:

Wayne L. Robbins, Jr.
Gullett, Sanford, Robinson & Martin
Nashville, Tennessee

Daniel D. Warlick
Warlick & Todd
Nashville, Tennessee

## AFFIRMED IN PART; REVERSED IN PART
## AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# O P I N I O N

This appeal presents an issue of first impression concerning the evidentiary standards applicable to disciplinary proceedings involving licensed physicians. The Tennessee Department of Health perfected an interlocutory appeal to the Chancery Court for Davidson County after an administrative law judge disqualified its expert witness for failing to satisfy the locality rule generally applicable in medical malpractice cases. The trial court reversed the administrative law judge's decision after concluding that a physician's conduct should be measured by a statewide standard of minimum competency rather than a particularized local standard of care. While the administrative law judge's decision was correct with regard to two of the charges, we affirm the trial court's decision in part because several of the charges in this proceeding only require proof that a physician has failed to meet statewide, minimal competency standards.

## I.

W. Dwight Frisbee is a surgeon who practices in Lewisburg, Tennessee. In October 1992, the Division of Health Related Boards of the Tennessee Department of Health ("Division") filed a notice of charges against him with the Tennessee Board of Medical Examiners. The Division alleged that Dr. Frisbee had committed acts of malpractice on six patients and that he had performed twenty-two unnecessary surgeries and procedures during 1991 and 1992.[1] Based on these factual allegations, the Division asserted, in the language of the licensing statute, that Dr. Frisbee had engaged in "unprofessional, dishonorable, or unethical conduct" and that he had committed "[g]ross malpractice, or a pattern of continued or repeated malpractice,

---

[1] The malpractice allegations included improper diagnoses, unnecessary surgery, negligent surgery, failure to properly treat post-operative infections and other complaints, and the improper and unnecessary insertions of chest tubes. The notice of charges also included performing numerous other unnecessary gall bladder removals, chest tube insertions, temporal artery biopsies, bone marrow biopsies, esophagoduodenoscopies, and one instance each of an unnecessary appendectomy and liver biopsy without proper consent.

ignorance, negligence, or incompetence in the course of medical practice"[2] and requested the assessment of $18,000 in civil penalties.

The hearing on the charges against Dr. Frisbee did not take place for over two years. In January 1994, the Division informed Dr. Frisbee that it planned to call Dr. George L. Eckles, a surgeon practicing in Murfreesboro, to "testify that Dr. Frisbee violated the standard of care expected of physicians practicing surgery in the State of Tennessee" with regard to seventeen named patients. Thereafter, Dr. Frisbee served a second set of interrogatories requesting the Division to provide him with the facts or opinions underlying the allegations of "unprofessional, dishonorable, or unethical conduct" and the allegations that he had committed "gross malpractice, or a pattern of continued or repeated malpractice, ignorance, negligence, or incompetence in the course of medical practice." In April 1994, the Division responded to both questions by providing Dr. Frisbee with the same factual narration of the same seventeen patients named in its January 1994 notice that it intended to use Dr. Eckles as an expert witness.

The administrative hearing concerning the charges against Dr. Frisbee and related charges against another Lewisburg physician commenced in mid-October 1994. When the hearing reconvened on November 21, 1994, the Division called Dr. Eckles to testify against Dr. Frisbee. After Dr. Eckles testified that the standard of care for general surgeons was the same throughout the state and that he was unfamiliar with the hospital in Lewisburg, Dr. Frisbee objected to Dr. Eckles's qualifications to testify under the locality rule in Tenn. Code Ann. § 29-26-115 (1980). The administrative law judge sustained the objection and excluded Dr. Eckles's testimony. The ALJ also granted the Division's motion to appeal his ruling to the Chancery Court for Davidson County and took Dr. Frisbee's "motion for directed verdict" under advisement.[3]

_____

[2]The Division also alleged that Dr. Frisbee had violated or attempted or conspired to violate the Medical Practice Act and that he had made false statements or representations in the practice of medicine.

[3]The ALJ stated that he would direct a verdict for Dr. Frisbee if the Division did not file its interlocutory appeal within twenty-one days.

The Division and the Board of Medical Examiners filed a petition for interlocutory review in the Chancery Court for Davidson County. Approximately five months later, the Division and the Board informed the trial court that the General Assembly had amended Tenn. Code Ann. § 63-6-214 (1997) to establish a "statewide standard of minimal competency and practice which does not depend upon expert testimony for its establishment."[4] The trial court filed a memorandum opinion on August 21, 1995, holding that the Tennessee Medical Practice Act "contemplates a statewide minimal standard of competence and that the locality rule applicable to civil malpractice lawsuits did not apply to disciplinary proceedings involving physicians." Dr. Frisbee has appealed to this court.

## II.

We turn first to the appropriate standard of review. This appeal requires us to review a decision by an administrative law judge to exclude evidence offered by a party in a contested case governed by the Uniform Administrative Procedures Act. Administrative law judges must rule on "questions of the admissibility of evidence" and must also "ensure that the proceedings are carried out in accordance with the provisions of . . . [the chapter relating to contested cases], other applicable law and the rules of the respective agency." *See* Tenn. Code Ann. § 4-5-301(b) (1991). Decisions involving the admissibility of evidence are not necessarily controlled by the Tennessee Rules of Evidence. *See* Tenn. Code Ann. § 4-5-313(1) (1991).

Decisions regarding the admission or exclusion of evidence are the type of "preliminary, procedural or intermediate" decisions that are immediately reviewable under Tenn. Code Ann. § 4-5-322 (a)(1) (Supp. 1977) if review of the final agency action would not provide an adequate remedy. While the Uniform Administrative Procedures Act does not clearly specify the standard to be used to review these decisions,[5] we have determined that they should be reviewed using the same standard used to review similar decisions by trial judges.

---

[4]*See* Act of May 30, 1995, ch. 329, § 4, 1995 Tenn. Pub. Acts. 505, 506.

[5]We do not view the standard of review in Tenn. Code Ann. § 4-5-322(h) to be applicable to an administrative law judge's decision with regard to the admission or exclusion of evidence. By its own terms, this section applies to "agency" decisions, not to preliminary decisions by administrative law judges.

Appellate courts generally review decisions concerning the admission or exclusion of evidence using the "abuse of discretion" standard of review. *See Dockery v. Board of Prof'l Responsibility*, 937 S.W.2d 863, 866 (Tenn. 1996); *Miller v. Alman Constr. Co.*, 666 S.W.2d 466, 468 (Tenn. Ct. App. 1983). The erroneous exclusion of evidence will not require reversal if the evidence would not have affected the outcome even if it had been admitted. *See Pankow v. Mitchell*, 737 S.W.2d 293, 298 (Tenn. Ct. App. 1987). Appellate courts will not consider issues challenging the exclusion of evidence unless the appealing party has made an appropriate offer of proof. *See Stacker v. Railroad*, 106 Tenn. 450, 452, 61 S.W. 766, 766 (1901); *Davis v. Hall*, 920 S.W.2d 213, 218 (Tenn. Ct. App. 1995).

The "abuse of discretion" standard of review implicitly recognizes the existence of a range of permissible judicial decisions and is intended to be a review constraining concept that implies less intense appellate review and, therefore, less likelihood of reversal. *See BIF v. Service Constr. Co.*, App No. 87-136-II, 1988 WL 72409, at *2 (Tenn. Ct. App. July 13, 1988) (No Tenn. R. App. P. 11 application filed). Appellate courts will decline to overturn a discretionary decision simply because the appellate judges would not have made the same decision. They may, however, overturn a discretionary decision if it rests on an inadequate evidentiary foundation or if it is contrary to the applicable legal principles.

The Board and the Division have complied substantially with these requirements, although it would have been better practice to make a tender of Dr. Eckles's expected testimony after the administrative law judge disqualified him as a witness. Dr. Eckles testified concerning his background and qualifications and the Department revealed the substance of his opinions during discovery. Accordingly, all that is left to decide is whether the administrative law judge abused his discretion by disqualifying Dr. Eckles as an expert witness based on Tenn. Code Ann. § 29-26-115.

### III.

The decision to disqualify Dr. Eckles as an expert witness rests on two grounds. First, the administrative law judge considered the essence of the charges

against Dr. Frisbee to be gross malpractice or repeated or continued acts of malpractice. Second, the administrative law judge interpreted our decision in *Williams v. Tennessee Bd. of Med. Exam'rs*, App. No. 01A01-9402-CH-00060, 1994 WL 420910 (Tenn. Ct. App. Aug. 12, 1994) (No Tenn. R. App. P. 11 application filed) to require expert witnesses called to establish the standard of care in disciplinary proceedings against physicians to comply with the locality rule. We have determined that the administrative law judge's conclusions are too broad.

## A.

We turn first to the administrative law judge's interpretation of *Williams v. Tennessee Bd of Med. Exam'rs.* In that case, we reversed a one-year suspension of a physician's license because the Department of Health and Environment failed to present proof of the "standard of care from which . . . [Dr. Williams] allegedly deviated." *Williams v. Tennessee Bd. of Med. Exam'rs*, 1994 WL 420910, at *6. We held that an administrative agency could not simply rely on its own expertise and that articulating the applicable standard of care was necessary to enable the courts to evaluate the materiality and substantiality of the evidence presented to prove the alleged violations. *See Williams v. Tennessee Bd. of Med. Exam'rs*, 1994 WL 420910, at *8.

*Williams v. Tennessee Bd. of Med. Exam'rs*, when properly interpreted, stands for the proposition that the Division of Health Related Boards must put on competent proof of the applicable standard of care rather than simply relying on the board members' personal acquaintance with the proper standard of care. The opinion stops far short of prescribing which standard of care must be used in disciplinary proceedings. Accordingly, the administrative law judge read too much into *Williams v. Tennessee Bd. of Med. Exam'rs* when he construed it to require that expert proof of the applicable standard of care in a physician's disciplinary proceeding must, in all instances, comply with Tenn. Code Ann. § 29-26-115(a).

## B.

We now turn to the applicable standards of care in disciplinary proceedings involving physicians. Tenn. Code Ann. § 63-6-214(b) contains twenty grounds for disciplining physicians, but not all these grounds require proof of any particular standard of care. Thirteen disciplinary grounds require only proof of specific inappropriate conduct,[6] two grounds are general catch-all provisions,[7] and five grounds require some consideration of professional practice standards.[8] No statute requires the use of the same standard of care for all of the latter five grounds. In fact, there is no statutory direction of any sort concerning the standard of care applicable to any of these grounds.

Only one of the five disciplinary grounds requiring some consideration of professional practice standards refers specifically to "malpractice." Tenn. Code Ann. § 63-6-214(b)(4) authorizes the Board of Medical Examiners to discipline a physician for "gross malpractice, or a pattern of continued or repeated malpractice, ignorance, negligence, or incompetence in the course of medical practice." The nature of the proof required to support a charge under this section is at the heart of the present dispute.

Dr. Frisbee asserts that the type of conduct that constitutes malpractice under Tenn. Code Ann. § 63-6-214(b)(4) is the same type of conduct that exposes a physician to civil liability under Tenn. Code Ann. §§ 29-26-115 through -120 (1980).

---

[6]*See* Tenn. Code Ann. § 63-6-214(b)(3) (acts of fraud and deceit); Tenn. Code Ann. § 63-6-214(b)(5) (habitual intoxication or misuse of intoxicants); Tenn. Code Ann. § 63-6-214(b)(6) (violation of the abortion statutes); Tenn. Code Ann. § 63-6-214(b)(8) & (9) (false advertising or failure to comply with advertising regulations); Tenn. Code Ann. § 63-6-214(b)(10) (felony convictions or any conviction involving illegal drugs or moral turpitude); Tenn. Code Ann. § 63-6-214(b)(11) (signing false certificates); Tenn. Code Ann. § 63-6-214(b)(14) (illegally dispensing or prescribing controlled substances); Tenn. Code Ann. § 63-6-214(b)(15) (use of secret cures or methods); Tenn. Code Ann. § 63-6-214(b)(16) (giving or receiving rebates); Tenn. Code Ann. § 63-6-214(b)(17) (practicing under a false or assumed name); Tenn. Code Ann. § 63-6-214(b)(18) (mental or physical incapacity); Tenn. Code Ann. § 63-6-214(b)(19) (use of radiation in specific circumstances without informed consent).

[7]*See* Tenn. Code Ann. § 63-6-214(b)(2) (violations or attempted violations of statutes, board orders, or criminal statutes) and Tenn. Code Ann. § 63-6-214(b)(20) (disciplinary actions by other governmental entities for conduct that constitute grounds for discipline in this state).

[8]*See* Tenn. Code Ann. § 63-6-214(b)(1) (unprofessional, dishonorable, or unethical conduct); Tenn. Code Ann. § 63-6-214(b)(4) (gross malpractice or a pattern of continued or repeated acts of malpractice); Tenn. Code Ann. § 63-6-214(b)(7) (willfully betraying a professional secret); Tenn. Code Ann. § 63-6-214(b)(12) & (13) (dispensing, prescribing, or distributing controlled substances contrary to professional practice or without making a bona fide effort to cure an addicted patient's habit).

Accordingly, he argues that the evidence needed to substantiate a malpractice charge under Tenn. Code Ann. § 63-6-214(b)(4) should satisfy the same admissibility standards as evidence introduced in civil liability proceedings. Because Dr. Eckles could not qualify as an expert witness under the locality rule applicable in civil liability proceedings, Dr. Frisbee concludes that the administrative law judge properly held that Dr. Eckles was not qualified to render an opinion concerning whether he had committed gross malpractice or a pattern of continued or repeated malpractice.

The Division and the Board respond that the locality rule generally applicable to expert witnesses in civil liability proceedings does not apply to physician disciplinary proceedings. While the Division and the Board concede that the conduct that constitutes malpractice may be the same in both proceedings, it insists that the difference in the purpose of the two proceedings justifies different evidentiary standards. Rather than using the locality rule associated with civil liability proceedings, the Division and the Board assert that malpractice determinations in disciplinary proceedings under Tenn. Code Ann. § 63-6-214(b)(4) should be based on a statewide standard of care.

The parties' dispute over the relationship between Tenn. Code Ann. § 63-6-214(b) and Tenn. Code Ann. § 29-26-115 requires us to construe these two statutes. We must give the fullest possible effect to both statutes, *see Wilson v. Johnson County*, 879 S.W.2d 807, 809 (Tenn. 1994), without unduly restricting or expanding their application. *See Storey v. Bradford Furniture Co. (In re Storey)*, 910 S.W.2d 857, 859 (Tenn. 1995). We must also construe the statute's words in light of their natural and ordinary meaning, *see State ex rel. Metro. Gov't v. Spicewood Creek Watershed Dist.*, 848 S.W.2d 60, 62 (Tenn. 1993), and in the context of the entire statute and the statute's overall purpose. *See West Am. Ins. Co. v. Montgomery*, 861 S.W.2d 230, 231 (Tenn. 1993); *McClain v. Henry I. Siegel Co.*, 834 S.W.2d 295, 296 (Tenn. 1992).

The courts need only enforce unambiguous statutes as written; however, ambiguous statutory terms require the courts to resort to the rules of statutory construction. *See In re Conservatorship of Clayton*, 914 S.W.2d 84, 90 (Tenn. Ct. App. 1995). When a statutory term or phrase is reasonably capable of more than one

meaning, we may consider the existing law, the circumstances existing when the statute was enacted, the causes of the statute's enactment, and the problem sought to be addressed. *See Still v. First Tenn. Bank*, 900 S.W.2d 282, 284 (Tenn. 1995). The purpose of this analysis is to determine which of the disputed term's or phrase's possible meanings is most consistent with the statute's evident purpose.

Neither the statutes governing the practice of medicine nor those governing civil actions for damages against healthcare providers define "malpractice."[9] In its most general sense, "malpractice" refers to any sort of professional negligence. Thus, in the context of the practice of medicine, it has been defined as any "improper treatment or culpable neglect of a patient by a physician." 9 *The Oxford English Dictionary* 274 (2d ed. 1989). However, "malpractice" is now commonly understood as professional conduct that falls below the standards of a particular professional community. Accordingly, the term connotes "the failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable members of the profession." *Webster's Third New Int'l Dictionary* 1368 (1971).

Even though Tenn. Code Ann. § 29-26-115 and Tenn. Code Ann. § 63-6-114 are not part of the same statutory scheme, we have determined that adopting a common interpretation of "malpractice" for both statutes is desirable in order to prevent confusion and possible misapplication of both statutes. Accordingly, we find that in both statutory contexts, the term "malpractice" refers to an act of negligence that falls below the standards of professional conduct recognized in the community in which the physician practices. It follows, therefore, that disciplinary charges against physicians based on allegations of "gross malpractice" or "a pattern of continued or repeated malpractice" can only be substantiated by competent proof that the physician's conduct fell below the standard of care applicable to similar physicians practicing in the same or a similar community. This proof may only be

---

[9]The definition of "medical malpractice action" in Tenn. Code Ann. § 29-26-102(6) was repealed in 1985. *See* Act of April 8, 1985, ch. 184, § 4(c), 1985 Tenn. Pub. Acts 340, 341.

presented by witnesses who meet the qualifications in Tenn. Code Ann. § 29-26-115.[10]

## C.

Our holding that the expert proof of "gross malpractice" or "continued or repeated malpractice" in disciplinary proceedings under Tenn. Code Ann. § 63-6-214(b)(4) must satisfy the requirement of Tenn. Code Ann. § 29-26-115 does not end the inquiry. Tenn. Code Ann. § 63-6-214(b) contains many other grounds for disciplining physicians, and a single act or course of conduct of a physician may violate more than one of these grounds. Proof to substantiate violations of these other grounds may entail proof of a different standard of care or may very well require no proof of a standard of care.

The purpose of licensing healthcare providers is to protect the safety of the public. *See Tennessee Bd. of Dispensing Opticians v. Eyear Corp.*, 218 Tenn. 60, 72, 400 S.W.2d 734, 740 (1966); *Davis v. Beeler*, 185 Tenn. 638, 645, 207 S.W.2d 343, 346 (1948) (quoting *Commonwealth v. Zimmerman*, 108 N.E. 893, 895 (Mass. 1915)). Persons who obtain a license must first meet minimal standards of competency, and thus the public may assume that persons who obtain a professional license from the state are qualified practitioners in their field. *See Kansas State Bd. of Healing Arts v. Foote*, 436 P.2d 828, 833 (Kan. 1968). Once licensed, practitioners must maintain their professional performance at a minimally acceptable level of competence in light of the current standards of the profession. *See Storrs v. State Med. Bd.*, 664 P.2d 547, 550 (Alaska 1983). Disciplinary proceedings involving licensed professionals protect the public from practitioners who do not meet minimum standards of competency, *see Janeway v. State Bd. of Chiropractic*

---

[10]Other jurisdictions' responses to this question have been mixed. One jurisdiction appears to apply the locality rule, *see Franz v. Board of Med. Quality Assurance*, 642 P.2d 792, 798 n.4 (Cal. 1982); while another jurisdiction has specifically declined to apply it. *See Spray v. Board of Med. Exam'rs*, 624 P.2d 125, 133 (Ore. Ct. App. 1981). Two other jurisdictions have abandoned their common-law locality rule for both civil liability and disciplinary proceedings for board-certified specialists when there is evidence of uniform standards applicable to specific situations throughout the country. *See Riordan v. Illinois Dep't of Registration & Educ.*, 562 N.E.2d 1063, 1064-65 (Ill. App. Ct. 1990); *Mishler v. State Bd. of Med. Exam'rs*, 849 P.2d 291, 294 (Nev. 1993).

*Exam'rs*, 33 Tenn. App. 280, 288, 231 S.W.2d 584, 588 (1950), or who are dishonest, immoral, disreputable, or incompetent. *See Fahmy v. Medical Bd. of Cal.*, 45 Cal. Rptr. 2d 486, 490 (Ct. App. 1995).

Physicians are licensed on the basis of statewide standards of competence. Instead of being based on local practice customs or preferences, these statewide standards involve ordinary practice competencies generally taught to students in medical school and generally understood by physicians in general. Accordingly, unless otherwise required by statute, disciplinary proceedings generally require licensing agencies to compare the performance of the physician who is the subject of the proceeding with the minimally acceptable level of performance in similar circumstances by similar practitioners in the licensing jurisdiction.

Tenn. Code Ann. § 63-6-214(b)(1), -214(b)(2) and the "ignorance . . . or incompetence in the course of medical practice" grounds in Tenn. Code Ann. § 63-6-214(b)(4) reflect these generally applicable standards of minimum competency. Since none of these grounds specifically involves "malpractice," we have no basis for concluding that the locality rule in Tenn. Code Ann. § 29-26-115 applies to evidence introduced either to prove or to disprove these charges. Accordingly, the administrative law judge erred by ruling that Tenn. Code Ann. § 29-26-115 prevented Dr. Eckles from giving expert testimony with regard to the charges based on Tenn. Code Ann. § 63-6-214(b)(1)-(3) and the charges of ignorance or incompetence in the course of medical practice under Tenn. Code Ann. § 63-6-214(b)(4). In order for Dr. Eckles's testimony to be admissible, he need only (1) identify the applicable standards of practice, (2) explain the source of these standards, (3) identify the classification of physicians to which these standards apply (i.e. "primary care" physician, "general surgeon," or "cardiologist"), and (4) explain how Dr. Frisbee deviated from these standards.

## IV.

We affirm the administrative law judge's decision to apply the locality rule in Tenn. Code Ann. § 29-26-115 to the charges of gross malpractice or a pattern of continued or repeated malpractice. We reverse the application of the locality rule to

the other charges against Dr. Frisbee and remand the proceeding to the Board of Medical Examiners for further proceedings consistent with this opinion. We tax the costs of this appeal in equal proportions to W. Dwight Frisbee and his surety and to the Division of Health Related Boards for which execution, if necessary, may issue.

-12-

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:


_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION


_____
SAMUEL L. LEWIS, JUDGE