STATE *ex rel.* LLEWELLYN, PLAINTIFF IN ERROR, *v.* KNOX
COUNTY *et al.*, DEFENDANTS IN ERROR.*

(*Knoxville,* September Term, 1932.)

Opinion filed November 26, 1932.

---

*As to title and subject matter of statutes, see 25 R. C. L., 834;
R. C. L. Perm. Supp., p. 5616; R. C. L. Pocket Part, title "Statutes,"
section 83.

As to delegation of legislative powers, see 6 R. C. L., 164; R. C.
L. Perm. Supp., p. 1634; R. C. L. Pocket Part, title "Constitutional
Law," section 165.

As to constitutional character of office of sheriff, see 24 R. C. L.,
912, 913.

On construction of statute upholding validity, see 6 R. C. L., 78;
R. C. L. Perm. Supp., p. 1608; R. C. L. Pocket Part, title "Con-
stitutional Law," section 77.

320

KENNERLY & KEY, for plaintiff in error.

J. G. JOHNSON, for defendant in error.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

This suit was brought by order of the Quarterly Court of Knox County seeking a declaration as to the constitutionality of an act (Chap. 192, Private Acts 1931) purporting to empower the County Judge to employ a clerk and impose on him the duties of purchasing agent for the County; and praying for a writ of mandamus to require the County Court to provide the necessary funds for the carrying out of the provisions of the act. A demurrer to the petition filed by Llewellyn, the Clerk named by the Judge, was sustained in part by the Circuit Judge, who held that the caption was insufficient, under Art. II, Sec. 17 of the Constitution, in so far as the provisions for a purchasing agent found in the body of the act were concerned, but he elided these provisions and sustained the act otherwise. Also, with respect to the Sheriff's office, he held the purchasing agent provisions of the act to be without effect on the further ground that this is a constitutional office, and the right to purchase supplies therefor could not be taken from him by the legislature. He dismissed the petition. Petitioner appeals.

Upon analysis of the pleadings, the attack on the constitutionality of the act presents, in substance, questions of constitutionality going (a) to the *form* of the act, challenged as ineffective to accomplish certain of the purposes set forth in its body, because of alleged fail-

ure to express in the title these purposes, specifically the requirements (1) that the various boards and county agencies shall make their purchases through the purchasing medium therein provided for, and (2) that the requisitions for purchases shall first be approved by the County Judge before being made; and, (b) to the *power* of the legislature in two particulars, (1) to delegate to the County Judge the authority to determine whether or not his Clerk provided for shall act as purchasing agent for the County, and (2d) to deprive the Sheriff of this prerogative inherent in his constitutional office.

In addition to these contentions, sustained by the trial Judge, as to which he applied the doctrine of elision, otherwise upholding the act, the demurrer raised the question that the act purported to create a county office to be filled by appointment of the County Judge, rather than by the people or the County Court, in contravention of Art. II, Sec. 17 of the Constitution, which contention was overruled by the trial Judge, and we think correctly.

Not only does the act itself expressly provide that the work shall be that of a clerical employee in the office of the County Judge, and not a county officer or official, but the distinctive indices recognized by our cases of a county officer are lacking. In *Davis* v. *Williams,* 158 Tenn., 34, this Court held the position there involved to be a ''county office,'' but emphasized that the act not only described the position created as an ''office,'' but provided for a fixed term, required a bond and also an oath of office. None of these indices appear here. On the contrary, the act before us expressly provides that these appointees shall be ''clerical employees . . . and not County officers or County officials,'' and neither a fixed term, bond or oath is provided for. The distinc-

tion between an employee and officer, in the contemplation of this constitutional requirement, was discussed in *Prescott* v. *Duncan,* 126 Tenn., pages 147, 148, and the appointees therein provided for were held not to be officers. The Court said: "Judging from the four corners of the act itself, they have no element of a public office, except that they are engaged by the commission to perform public duties. The chairman of the county court is authorized by the Code to employ counsel to represent the county. Such counsel would perform legal services for the entire county, but this employment would not make him a county officer. We think they are employees merely. And see *Cross* v. *Fisher,* 132 Tenn., 45; *Todenhausen* v. *Knox County,* 132 Tenn., 171; *State ex rel.* v. *Buck,* 138 Tenn., 112.

 Considering next the challenge made of the sufficiency of the caption, it reads as follows:

"AN ACT entitled 'an Act to authorize and empower. the County Judge or County Chairman of any county in the State of Tennessee having a population of not less than one hundred and fifty-four thousand nine hundred and two (154,902) inhabitants, nor more than one hundred fifty-seven thousand four hundred ninety-seven (157,497) inhabitants, according to the Federal Census, to employ a clerk for the said County Judge or Chairman as Chief Clerk, and upon whom the said County Judge or Chairman may impose the duty of acting as purchasing agent for the said County, and all such other clerical help as may be necessary, defining the duties of such clerk upon whom may be imposed the duty of purchasing agent and fixing compensation for such clerks and authorizing and directing the Quarterly County Court of such counties to appropriate funds therefor.' "

It is unnecessary to cite or review decisions construing the familiar constitutional provision that the "sub-

ject'' of an act must be ''expressed in the title.'' Each case as it arises must be decided on its own facts. The whole purpose of the requirement is that the legislature shall be put reasonably on notice, in condensed terms, of the general purposes proposed to be legislated on. Details are not expected to be set forth in a ''title.'' Did this caption reasonably advise the observing legislator that the act proposed for passage was making provision for a ''purchasing agent'' for the counties within the population classification defined?

Reference is expressly made thereto in the caption, not once, but twice. The title recites that the act is one ''to authorize and empower the County Judge . . . to employ a clerk for the said County Judge or Chairman as Chief Clerk, and upon whom he may impose the duty of acting as purchasing agent for the said County . . . defining the duties of such clerk upon whom may be imposed the duty of purchasing agent,'' etc.

This language would seem directly to call attention to the fact that by the act provision was being made for a ''purchasing agent for the said County,'' and also ''defining the duties'' thereof.

But it is said that by certain detailed provisions in the body of the act the various boards and agencies of the County are required, contrary to then established custom and the express provisions of existing legislation, to make requisition exclusively through the County Judge for all needed supplies and purchases, if and as approved by him to be purchased by this agent, and that this requirement is beyond the scope of the caption, involving a radical departure of which adequate notice is not expressed in the title.

Seeing that the title advises that the act is one to authorize a purchasing agent for the said County and define

the duties of such purchasing agent, is not notice reasonably given that the various county agencies making purchases "for the said County" will be required by the act to co-operate in the performance of these duties? How otherwise could he function as "purchasing agent for the said County?" If he was not to do his purchasing upon, and only upon, the call, or requisition, of the several agencies conducting the business of the County, then, if he acted at all, it would be on his own initiative and inadequately advised judgment as to the requirements of the County agencies. Such an unreasonable and improvident plan would be wholly unworkable and unthinkable. The duties of purchasing agent for municipalities and other governmental agencies, as well as the larger private and quasi-public corporations, are quite generally recognized. It is a matter of common knowledge that under modern conditions the use of a purchasing agent has been quite generally adopted as a means of consolidating the buying of supplies, in the interest of economy and improved accounting. Designation of one as "the purchasing agent" of a City, county or other corporation, clearly carries the idea that it is through such agent that the supplies needed in operation of the enterprise are purchased.

We are impressed that the powers conferred upon this agent by this act are greatly magnified on the briefs. For example, it is said that, "this so-called clerk has more power with reference to purchasing and making expenditure of county funds than all of the elected officers of the county." And, again, "this law under consideration purposes that a mere clerk shall perform all these duties of the Road Commission," etc.

The act nowhere vests in this clerk-purchasing agent any authority to expend any of the funds of the county on his own initiative. His duties are purely ministerial. He buys nothing except upon the order or requisition of the official heads of the various executive departments, approved by the County Judge, the financial agent of the County, whose general duty it is, independently of this act, to approve expenditures when made and issue when approved his warrants on the county treasury therefor. It is no part of this agent's duty or prerogative, to decide when or what to buy for the county agencies, but only to perform the sole duty of purchasing what and when he is directed to purchase. This purchasing agent is no more than a ''clerk'' having the duty of making purchases under controlling authority and explicit directions. We are of opinion that much of the apprehension implied in the attack on the act grows out of an apparent mis-apprehension of the scope of the authority conferred on this agent.

A more plausible phase of the challenge made of the sufficiency of the title appears to be the objection that authority vested in the County Judge to pass on and approve requisitions from the various departmental heads before purchases may be made by the clerk-agent is a subject not expressed in the title. As above suggested, the effect of this provision is merely to empower him to act thereon before, rather than after, purchases are made. (In section 5 of the Act the power of the County Board of Education to issue its warrants is reserved to it.) Independently of this act, the County Judge is by Statute (See Shannon's Code, Sections 511 and 512, *et sequi;* Code of 1932, Sections 1059-1073) given comprehensive duties and powers. He is the ac-

counting officer and general financial agent of the County, must audit all claims for money against the County, and draw all warrants upon the County treasury. It is true that it is only by implication that the language of the title may be said to empower him to pass on and approve all requisitions for purchases before his clerk, or purchasing agent, shall act thereon. But is not this, again, a detail of administering the duties of a county purchasing agent, acting under his appointment and direction, which is both desirable and to be reasonably contemplated in an act establishing a purchasing agent, who the caption clearly indicates is to do his work as a clerk of and under the control of the County Judge? Put on notice by the express terms of the caption that the body of the act will create this position and define the duties thereof, is not this but a detail provision defining the duties incident to the work which the caption expressly recites the body of the act will set forth? He shall act as purchasing agent when so required. He shall purchase only such supplies as shall have been requisitioned by the various executive heads and when approved by his immediate superior, the County Judge. He shall purchase after advertisement and on competitive bids. It cannot be questioned that the legislature may create a purchasing agent for the county and require, not withstanding existing laws in conflict, which are by implication repealed to such extent, that all departments make their purchases through this agent, and further, that he act only after and with the approval of the County Judge. This the act plainly does, and we are constrained to the conclusion already indicated, that the title gives reasonable notice of the purposes of the legislation, and is within the constitutional requirement invoked by the defendant county.

Although not determinative in importance, it is of interest to note in this connection that House Bill.436, embodying this act, was introduced by the three representatives from Knox County. May it not be assumed that these gentlemen introducing this local bill were advised of its contents by the title, however wanting in detail; and while in theory such a measure is presumed to call for the consideration of all members, it is a matter of common knowledge, as a practical proposition, that local bills are in fact scrutinized by local delegations only. So that, if it were proper to give application to this actual situation, the attack upon the caption as failing to give notice of the recitals in the body of this act would appear to be without basis in fact.

We come now to a consideration of that phase of the challenge of the act which denies the power of the legislature (1) to delegate authority to the County Judge to "impose the duty of acting as purchasing agent" upon his chief clerk, and, (2) to take from the Sheriff, a constitutional officer, his prerogatives in the matter of making purchases.

The argument (1) appears to rest on the assumption that we have here an attempted delegation of legislature power. If this premise be granted it would have to be, of course, conceded that "functions of the legislature must be exercised by it alone and cannot be delegated." 12 C. J., page 839, citing many authorities, including from Tennessee *Fogg* v. *Union Bank,* 1 Bax., 435, and *State* v. *Armstrong,* 3 Sneed, 634. "But any power not legislative in character which the legislature may exercise it may delegate, and before a court can properly hold that a statute is void as unconstitutionally delegating legislative power, it must clearly appear that the power in question is purely legislative."

■ We are not of opinion that the power conferred upon the County Judge in the act before us to determine when the provisions of the act providing machinery for a purchasing agency for Knox County shall be put into effect is legislative power. We conceive it to be semi-political and executive in its nature only. It is merely a conferring of discretion on a named official in the administration of the law. "While, however, the legislature may not delegate the exercise of its discretion as to what the law shall be, it may confer discretion in the administration of the law . . . With the growing complexity of modern life, the multiplication of the subjects of governmental regulation, and the increased difficulty of administering the laws, there is a constantly growing tendency toward the delegation of greater powers by the legislature, and toward the approval of the practice by the courts." 12 C. J., pages 840-841. Among other of the many cases cited to sustain this distinction brought out in the text above quoted are the following from Tennessee: *Scott* v. *Marley,* 124 Tenn., 388; *Samuelson* v. *State,* 116 Tenn., 470; *Leeper* v. *State,* 103 Tenn., 500.

A leading case dealing with this question of the delegation of power by the legislature is *Field* v. *Clark,* 143 U. S., 649-700, 36 Law Ed., 294. Therein Mr. Justice HARLAN approved and quotes the following pertinent statements of the rule: " 'The true distinction,' as Judge RANNEY speaking for the Supreme Court of Ohio has well said, 'is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid

objection can be made.' *Cincinnati, W. & Z. R. Co.* v. *Clinton County Comrs.*, 1 Ohio St., 88. In *Moers* v. *Reading*, 21 Pa., 202, the language of the court was: 'Half the statutes on our books are in the alternative, depending on the discretion of some person or persons to whom is confided the duty of determining whether the proper occasion exists for executing them. But it cannot be said that the exercise of such discretion is the making of the law. "

It seems to be clear that the legislature in the instant case has done no more than to confide to the discretion of the County Judge "the duty of determining whether the proper occasion exists for executing" the provisions made by the act for consolidating the buying of supplies for the County of Knox under a single purchasing agency, vesting in him at the same time the appointive power of an employee-agent for this purpose.

It is convincing, upon a consideration of this act as a whole, that, under the subject generally expressed in the caption by reference to the creation of a purchasing agent for the County and defining the duties thereof, the primary or fundamental objective, as a necessary co-incident, was the setting up of well defined machinery for the exercise of these duties, vesting a discretion in the County Judge to determine whether and when this machinery should be put into operation. This broad view of the act an a whole convinces us that the provisions of the act set forth in its body are sufficiently indexed by the language of the title, and that the delegation of discretionary power to the County Judge is well within the constitutional power of the legislature as defined in the foregoing high authorities.

■ Moreover, to hold that the legislature of this State might not constitutionally delegate administrative powers, to be exercised upon discretion, to individual officials or boards, would be in conflict with widely recognized precedents. For example, in *Prescott* v. *Duncan, supra,* where this court had under consideration the act of 1911, appointing a Board of County Commissioners for Shelby County, it appears that broad powers of discretionary administration were clearly recognized as having been vested in the Commissioners by the legislature without constitutional objection. Indeed, the State Reorganization Bill, under which heads of the various State Departments are provided for, which law has been construed and recognized as valid, contains numerous examples of conferred discretionary administrative powers. *House* v. *Creveling,* 147 Tenn., 589.

By way of illustration, our statutes confer upon the County Judge the power to engage legal counsel to defend suits brought against the County, whenever in his judgment such employment is necessary. While it has been held that this statute did not authorize him to employ counsel except for the purposes named in the statute, it is conceded in these cases that the legislature might constitutionally empower him to go further. Undoubtedly, the legislature might vest in him broadly discretionary power to retain an attorney to represent the county generally, and, incidentally, might require that all contracts or obligations by which it is proposed to bind the county, entered into by any of the executive agencies of the county, should be first submitted to the County Judge for his approval as to substance, and then passed on by him for approval as to form to such attorney as he might have selected, and on whom he might have im-

posed such duties. We apprehend that no question would be made of the validity of such a law. The analogy appears to be apt between the situation that would be created by such legislation and that brought about by the law before us.

It remains (2) only to consider the challenged right to infringe upon the prerogatives of the constitutional office of Sheriff. It is, of course, well settled in this State that the Sheriff is a constitutional officer, and that his right to the control of the jail and the "custody and keep" of the prisoners cannot be substantially abridged. *State ex rel.* v. *Cummins,* 99 Tenn., 667; *Collier* v. *Montgomery County,* 103 Tenn., 708; *Prescott* v. *Duncan, supra.*

However, a distinction is properly to be taken, applicable here, between the exclusive right of the Sheriff to make purchases of such supplies as he is required to provide in the boarding of prisoners, payments for which are made by him out of fees, or other forms of compensation coming to him, and other classes of supplies incident to the up-keep of the property owned by the county, for the payment of which the county is liable, and for which warrants must be drawn on the county treasury. For example, supplies of food on the one hand, —and, on the other, expenditures for the up-keep of the buildings and grounds in his care, and for the heating, ventilation and preservation thereof. This distinction appears to be consistent in this case with the only language in the act which affects the office of Sheriff. In Section 2, wherein it is made the duty of the agent to purchase "all supplies of every description, kind and character," the act proceeds, "which may be needed or used in or for all county offices of said county and by all

county officers, officials and employees thereof, or in and for the county jail, the county workhouse," etc., but this clause concludes with the qualifying language "where any such supplies of any description, kind and character are paid for, or shall be paid for, out of the public funds belonging to the said county, or counties." It is only to such supplies as "are paid for or shall be paid for out of the public funds belonging to the said county" that the act applies. Giving recognition to this distinction, and reserving to the Sheriff the power of making purchases to the extent above indicated, we do not find that the act operates to deprive the Sheriff of any prerogatives secured to him under the constitution.

Finally, it is urged that the act before us is unconstitutional in so far as it undertakes to provide that the clerk-purchasing agent shall "sell any and all real and personal property of the county not needed or suitable for the public use," etc., it being insisted that this takes away from the Quarterly Court rights in this regard of which it may not be so deprived. In the first place, this argument appears to overlook the language of this paragraph of the act which reads that this clerk-agent "shall, upon being so requested or directed by the Quarterly Court, or any other county official duly authorized so to do, sell," etc. Here is a distinct limitation which clearly meets the objection interposed. The effect is merely to require that this purchasing agent shall so act at the behest of the Quarterly Court, or other county official.

Moreover, it must be conceded that the legislature may take from the county court all powers not conferred upon it by the constitution expressly or by necessary implication, and this includes practically all powers

exercised by that court, with certain few and non-pertinent exceptions. *Prescott* v. *Duncan, supra,* and other cases.

In view of what has been hereinbefore said, and giving application to the strongly emphasized rule that the courts must uphold the constitutionality of an act of the legislature wherever possible to do so consistently with a reasonable recognition of constitutional provisions, (*Horne* v. *Railroad,* 1 Cold., 74, and many other cases cited in Shans. Ann. Const. 609) we are constrained to modify the judgment of the trial court so as to give validity and effect to the act under consideration, and the writ of mandamus prayed for will issue.

It appears that the petition was filed in this case at the instance of the county court with an agreement that the reasonable fees of counsel for petitioner would be paid by the county. Unless counsel of record agree upon the amount of this compensation, this matter will be referred to the Clerk of this Court to take proof and report a reasonable fee allowance.