STATE *ex rel.* HORNER *v.* ATKINSON, SHERIFF.

*(Nashville,* December Term, 1940.)

Opinion filed June 28, 1941.

LOGAN BEASLEY and JAMES R. BROWN, both of Centerville, for plaintiff in error.

C. B. STEPHENSON and W. L. PINKERTON, both of Centerville, and CORNELIUS, McKINNEY & GILBERT, of Nashville, for defendant in error.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

A petition for *mandamus* was filed by the relator Horner, a workhouse guard in Hickman County, appointed by the County Highway Commission, seeking an order on the sheriff to deliver to him, from day to day, for work on the County roads, such prisoners as were confined in the County jail serving out fines or sentences. The trial Judge overruled a demurrer and granted the writ. The defendant sheriff appeals.

The rights of the parties depend primarily on construction of an act passed in 1927, Priv. Acts Chapter 196, providing for a Board of Highway Commissioners of three for Hickman County and a County Road Superintendent, with the usual powers of supervision. Power was conferred to work the inmates of the County workhouse on the County roads. By Subsections 3 and 4 of section 8 of the Act the duties and powers of the Road Superintendent were thus set forth:

"He shall have the management and control, and subject to his orders, all laborers, whether hired labor, Work House, Prisoners, or free hands, and wagons and teams, and may require any or all of such labor to work on any road, bridge, or culvert in the county, as may be deemed best and advisable by him; provided however, no free labor or road hand, or wagon and team shall be required to do work or duty on any road in the county outside of the district in which said free hands reside, as to the free hands or labor, or the district where said wagon and team is located, as to the wagon and team.

"He shall have the right and authority to appoint or employ as many overseers or foremen to aid and assist him in carrying out the purposes of this Act, as deemed advisable by him, who shall, at all times, be subject to his orders and be under his control."

And by Section 20 it was provided:

"Be it further enacted, That it shall be the duty of the County Road Superintendent to work all able-bodied workhouse prisoners on the public roads, or in the quarries, and at the crushers, on the bridges and on the culverts in said counties, until such prisoners have worked out their sentences, fine and costs.

"He shall call for said prisoners for work each morning at the jail or workhouse, and receive from the Sheriff as keeper of the workhouse all able bodied workhouse prisoners, and at the close of the day re-deliver them to the Sheriff, and during the time they are being removed from the jail or workhouse, and until they are returned in the evening, said prisoners shall be in the exclusive custody of said County Road Superintendent, or some overseer or foreman appointed or employed by him, or guard, and shall be responsible for them until they are redelivered to the Sheriff, provided that when the number of County convicts is so few that it would in the judgment of the Road Superintendent be impracticable to take them out and work them, considering the costs incident thereto, he will not be required to work prisoners at all.

"The purpose of this Act in regard to the County convicts is only to provide a method for working them on the county roads, bridges, culverts and in the quarries, and in all other respects the general law in regard to county convicts is not to be affected, and nothing in this Act is to be construed as altering it other than hereinabove stated."

Code, Section 12004, *et seq.*, provides that any county which has not provided the lands and buildings for a separate workhouse, "may, through its quarterly court, declare its jail to be a workhouse." The petition alleges that this step had been taken in Hickman County, so that

the jail is also the County workhouse. The provisions of the Act of 1927 above quoted are, therefore, applicable, specifically those requiring the sheriff to deliver daily "all able-bodied workhouse prisoners" into the custody of the County Road Superintendent for road work under his supervision and direction.

However, the present controversy appears to center around Chapter 610 of the Private Acts of 1939, which expressly provides (1) that the Highway Commission shall have exclusive power to appoint all guards for the prisoners working on the roads, and (2) that said appointments shall be approved by the sheriff of the County. This act reads:

"Section 1. Be it enacted by the General Assembly of the State of Tennessee, That in all counties having a population [applicable only to Hickman County] . . . the Highway Commission of such county shall have the exclusive power to appoint any guard or guards necessary for the working of prisoners upon the public roads of the county. Provided, however, that no guard or guards shall be appointed by the Highway Commission unless and until their appointment is approved by the sheriff of the county.

"Section 2. Be it further enacted, That any guard or guards appointed and employed by the Highway Commission to supervise the working of prisoners upon the public roads of the county shall be capable of performing the duties of foreman and overseer on behalf of the Highway Department, and shall be men of sound judgment, approved by the sheriff as capable of just and humane treatment of prisoners and the efficient working of such prisoners.

"Section 3. Be it further enacted, That the compensation of any guard or guards so employed by the High-

way Commission and approved by the sheriff be fixed by a Highway Commission and paid by them in like manner as other employees of the Highway Commission."

The controversy is as to the right to name the guard or guards for the prisoners while being worked on the roads by the County Road Superintendent. The petitioner, Horner, was elected, or appointed, (to succeed himself) by the Hickman Highway Commission at a meeting held on August 10th, 1940, "to work the prisoners for the next two years." His appointment was duly approved by the Sheriff, and he proceeded with the discharge of his duties. September 1st thereafter, the defendant, Atkinson, having been elected to the office of Sheriff, took office, and refused to recognize Horner as the appointee of the Commission, and has refused to turn over to him the prisoners eligible for road work, insisting (1) that the Act of 1939, which expressly vests in the Highway Commission and its Superintendent the right to appoint the guard or guards for the prisoners is unconstitutional, in that it deprives him of his constitutional rights as Sheriff to guard prisoners; and (2) that the appointment of Horner under this Act, if constitutional, is inoperative because it has not received his approval, as provided by the Act. He insists, further, that if the Act of 1927 is construed to confer the power of appointment on the Highway Commission, then that Act, also, is unconstitutional in this regard.

As said by the trial Judge, "Control of the roads of a particular county is usually regarded as an appropriate subject for local legislation, and special road laws for particular counties have been quite generally sustained. *Crockett County* v. *Walters,* 170 Tenn., 337 [95 S. W. (2d), 305]; *Condon* v. *Maloney,* 108 Tenn., 82 [65 S. W., 871]; *Archibald* v. *Clark,* 112 Tenn., 532 [82 S. W.,

310]; *Galoway* v. *State,* 139 Tenn., 484 [202 S. W., 76, L. R. A., 1918D, 970]; *Williams* v. *State,* 155 Tenn., 364 [293 S. W., 757].''

■ And, as said by Mr. Justice Cook in *Butler* v. *McMahan,* 166 Tenn., 511, 64 S. W. (2d), 1, 2, ''Affecting the county, as the act does, in its governmental capacity, as a unit of the government, the question of arbitrary classification is not involved,'' citing cases. It was a special road law for Sevier County which was there considered. It was so held in *Loring* v. *McGinness,* 163 Tenn., 543, 44 S. W. (2d), 314, passing on a special road law for DeKalb County.

■ Many of these acts contain general provisions, similar to those now before us, conferring broad powers of control on the Highway Commission, or Commissioner, or Superintendent. We are pointed to no reported case in which the sheriff has sought to assert that his rights as a constitutional officer have been infringed by depriving him of the duty or privilege of guarding the prisoners while being worked on the county roads. We find neither authority, nor substantial reason for this contention. No emoluments of office are involved. The only prerogative of office which is affected is that asserted of guarding the prisoners when absent from the jail and in control of an authority designated by the Legislature for this duty. We said in *State ex rel.* v. *Knox County,* 165 Tenn., 319, at page 334, 54 S. W. (2d), 973, 977, ''It is, of course, well settled in this State that the sheriff is a constitutional officer, and that his right to the control of the jail and the 'custody and keep' of the prisoners cannot be substantially abridged,'' citing *State ex rel.* v. *Cummins,* 99 Tenn., 667, 42 S. W., 880; *Collier* v. *Montgomery County,* 103 Tenn., 705, 708, 54 S. W., 989; *Prescott* v. *Duncan,* 126 Tenn., 106, 147, 148 S. W., 229. A distinction was taken

between the right of the sheriff to purchase supplies for his use in boarding and upkeep of his prisoners, and supplies for County purposes paid for from County funds. And in *Collier* v. *Montgomery County,* cited *supra,* a distinction was recognized between prisoners who are confined awaiting trial, etc., and those who have been convicted and committed to work out fines or sentences. It is this latter class which is involved here, and as to this class it is settled that the sheriff's right of custody and control does not extend, whenever the Legislature has made other provisions therefor. If this were not so, the sheriff's right of custody would extend to the inmates of all the separate workhouses now established by law in the various counties, an insistence which has never been made.

Our general Code provisions for workhouses originated with Chapter 123, Acts of 1891, construed in *State ex rel.* v. *Cummins,* 99 Tenn., 667, 42 S. W. 880. The constitutional rights of sheriffs were reviewed in that case, and the distinction above noted was pointed out. In so far as that Act deprived the Sheriff of his right to the custody of the jail and of the prisoners confined therein awaiting trial, transfer, execution, etc., it was held unconstitutional and void; but the right of the Superintendent of the workhouse was upheld to the custody and control of those prisoners eligible to workhouse duty and service. We think it clear that the Legislature may provide, as it has done, for these workhouse prisoners to be taken into control and custody by the Highway Commission and Superintendent and guards selected by them and that the challenged provisions of these Acts of 1927 and 1939 are free from constitutional objection. *(4)* This was the conclusion of the learned trial Judge on this issue. He also sustained the appointment of the petitioner as guard,

his view being that the express provision in the Act of 1939 conferring on the Highway Commission "the exclusive power to appoint any guard or guards necessary for the working of prisoners" could not be held subject to the approval of the Sheriff; that the provision in the Act for such approval by the Sheriff is repugnant and inconsistent with the true meaning of the term "exclusive" and must be rejected. This view is sustained by plausible reasoning and citation of definitions and authority, but we find no necessarily irreconcilable inconsistency. It is quite common for the appointing power to be vested in one authority, subject to confirmation or approval by another. This is, in substance, what we find here. The power of appointment commonly vested in State and Federal executives is commonly conferred subject to ratification or confirmation, a form of approval. This it seems to us was what is here provided for. The provision for approval by the Sheriff is expressed too plainly and with too much reiteration to be disregarded. It is repeated in each of the three sections of the Act. It is apparent that the Legislature so shaped and hedged about the selection of this guarding officer, with duties of great responsibility, in order to insure, as far as possible, "just and humane treatment of prisoners," as well as efficient work.

As before shown, the petitioner below was duly appointed by the Highway Commission, on August 10th, 1940, for a term of two years, and his appointment was "approved" by the then incumbent of the office of Sheriff. It was competent for the Commission to make the appointment for this term. *State ex rel.* v. *Williford,* 104 Tenn., 694, 695, 58 S. W. 295.; *State ex rel. Brown* v. *Polk County,* 165 Tenn., 196, 198, 54 S. W. (2d), 714. Under these authorities his appointment was good for the

two-year term. We think it would be an anomaly to require that the approval of a successor executive should be required. The official act of approval runs with the term.

It results that the petitioner, as held by the trial Judge, is entitled to have delivered to him such prisoners as are eligible for road service from day to day. The judgment of the trial Court awarding the writ of *mandamus* is affirmed.