OPINION

CANTRELL, Judge.
The Board of Medical Examiners suspended the petitioner’s license to practice medicine for a six month period. On review in the Chancery Court of Davidson County under the Administrative Procedures Act, the court refused any relief. On appeal, the petitioner contends: (1) that the Board’s decision was not supported by substantial and material evidence because there was no expert proof that the petitioner violated the law, and (2) that the statutes the petitioner allegedly violated were so vague the proceedings violated his right to due process. We affirm the chancellor’s order.
I.
In June of 1990, the Tennessee Board of Medical Examiners gave notice to the petitioner that he was accused of violating Title 63 of the Tennessee Code by prescribing and dispensing large amounts of inappropriate drugs for patients with problems of obesity. Specifically, the notice alleged that the petitioner violated Title 63 by engaging in the following acts:
A. Unprofessional, dishonorable or unethical conduct. Tenn.Code Ann. § 63-6-214(b)(1);
B. Gross malpractice, or a pattern of continued or repeated malpractice, ignorance, negligence, or incompetence in the course of medical practice. Tenn.Code Ann. § 63 — 6—214(b)(4); and
C. Dispensing, prescribing, or otherwise distributing any controlled substance or any other drug not in the course of professional practice, or not for a legitimate medical purpose, or not in good faith to relieve pain and suffering, or not to cure an ailment, physical infirmity or disease. Tenn. Code Ann. § 63-6-214(b)(12).
The matter was set for contested case hearing before an administrative law judge and the Board. The petitioner did not contest the factual allegations in the notice of charges so the Board made the following findings of fact:
A. Since 1986 or before, the Respondent has issued prescriptions for and also directly dispensed Schedule II stimulant drugs. These prescriptions and dispensings are for Respondent’s weight control patients and have been generally given on a monthly basis.
B. Pharmacy audits were independently performed by two (2) state agencies in the Memphis area as follows:
(1) Investigators from the Board of Pharmacy of the Department of Commerce and Insurance, focused on one particular Memphis pharmacy which had been ordering large amounts of Schedule II stimulant drags. The Pharmacy Board audit revealed that in the two (2) year period from June 7,1986, to June 29, 1988; Biphetamine 20, Preludin En-duréis 75 mg., Dexedrine 15 mg., Dexedrine 5 mg., and Desoxyn 15 mg. accounted for 1238 prescriptions from this one pharmacy. Of those *957 1238 prescriptions dispensed by that pharmacy, the Respondent had issued 938 of them. These findings were made known to the Health Related Boards’ investigative unit by a written complaint on July 15, 1988.
(2) An audit was undertaken of several pharmacies (including the particular pharmacy audited by the Board of Pharmacy in B.(l) above) by investigators of the Division of Health Related Boards of the Department of Health and Environment (“Division”). This audit covers approximately two (2) years, from January of 1987 to November of 1988. As an adjunct to the audit, twenty-two (22) patients’ records were collected from the Respondent. This audit and the patient records revealed that during this period of time at least 1448 Schedule II stimulant drug prescriptions were issued by the Respondent. The following breakdown is noted:
983 prescriptions for Desoxyn
424 prescriptions for Preludin
36 prescriptions for Biphetamine
5 prescriptions for Dexedrine
1448 prescriptions for Schedule II stimulant drugs
C. The United States Department of Justice, Drug Enforcement Administration collates all orders made for scheduled drugs. This collation is published quarterly under the acronym of ARCOS (Automation of Reports and Consolidated Orders System). In the 1988 year end ARCOS report, the Respondent led the entire State of Tennessee in the amount of amphetamine base that he had ordered from drug companies for that year. The drug ordered by Respondent was a total of 12,500 dosage units of dextroamphetamine sulfate. This amount would be for Respondent’s dispensing from his medical practice and would be additional to those prescriptions noted in section B(l) and (2) above.
D. An analysis of the prescription-writing habits of the Respondent shows that almost universally, the Schedule II stimulant prescriptions were written for thirty (30) dosage units per prescription.
E.The Respondent engages in the specialty practice of Obstetrics and Gynecology. However, when interviewed by Division investigators on September 6, 1989, the Respondent stated that he had been prescribing diet medication throughout his practice. If the patient exhibited nerve-related conditions, he would prescribe one of the benzodiazepine group of scheduled medication. The Respondent stated that he has for some time now sought to gradually close out his practice of OB-GYN and orient his practice primarily to that of weight reduction.
From these findings the Board concluded that the petitioner violated the statutes as charged. The Board’s order suspended the petitioner’s license to practice for a period of six months and required as a condition of reinstatement that the petitioner take and pass the SPEX examination, take a mini-residency or a fellowship in a particular field, and show proof satisfactory to the Board of hospital privileges.
II.
Under the Administrative Procedures Act the court may reverse or modify the decisions of the administrative agency if the agency’s decision was: (1) in violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedures; (4) arbitrary or capricious as characterized by abuse of discretion or clearly unwarranted exercise of discretion; or (5) unsupported by evidence which is both substantial and material in the light of the entire record. Tenn. Code Ann. § 4-5-322.
The petitioner contends that the Board’s findings are not supported by substantial or material evidence because the State did not produce expert testimony to establish a standard that the appellant violated. The State counters with the argument that all the Board members were physicians and therefore were able to judge the acts of the petitioner without any expert guidance. See CF Industries v. Tennessee Public Service Commission, 599 S.W.2d 536 (Tenn.1980). The petitioner rejoins that to allow *958 members of the Board to base a decision on their own unexpressed knowledge deprives the petitioner of a meaningful review of the decision. See In re Williams, 60 Ohio St.3d 85, 573 N.E.2d 638 (1991); Dotson v. Texas State Board of Medical Examiners, 612 S.W.2d 921 (Tx.1981).
We choose to avoid this conflict in the authorities. It is not necessary to resolve the conflict in this case, because at least one of the grounds on which the Board based its decision does not require the Board to rely on its own expertise.
The first two Code sections the petitioner was accused of violating proscribed unprofessional and unethical conduct, gross malpractice, ignorance, negligence or incompetence. Tenn.Code Ann. § 63 — 6—214(b)(1) and (4). Under the state of the record in this case it could logically be argued that to find the petitioner guilty of these sections the Board would have to rely on its own medical expertise. The third Code section, however, § 63-6-214(b)(12), proscribes dispensing, prescribing or otherwise distributing any controlled substance or any other drug not in the course of professional practice, or not in good faith to relieve pain and suffering, or not to cure an ailment, physical infirmity or disease.
The facts found by the Board were taken directly from the notice of charges filed against the petitioner and were not controverted. In addition, the State elicited proof from the petitioner himself that for one specific patient he prescribed Desoxyn, a Schedule II stimulant, for a period of more than two years without any success in reducing the patient’s weight. After a few months the patient was also given Valium for her nerves. The petitioner admitted that the Physicians Desk Reference on which he relied indicated that the Schedule II stimulants should only be given for short periods of time. He also admitted that the Valium had to be given to the patient because of nervousness produced by the Desoxyn. Other records showed that the petitioner had many other patients for whom he prescribed Schedule II stimulants over long periods of time. His explanation for this course of treatment was:
We had some patients who — who we thought were sincerely interested in loosing [sic] weight. Some patients who were poor, destitute, unattractive, fat and we— some of the things that — that—some of the feelings that we got from some of these patients — I mean, I don’t know if you — I think some of the physicians would understand it, was a little different than what we could put on paper. We were trying our best to help some of these people over the hump, so to speak.
And so, I — I would be the first to say that we did not always abide by these— these regulations and in some ways, I think, we were helping these people. I really do think that we were helping them in some way. We — we—the main emphasis, I think, we were able to — to improve their self esteem.
I — and, I think, some of the patients, even though they weren’t getting results that we always wanted them to get or that they always wanted to excel, I think, that — I think they were helped, nevertheless, just the same. I think a physician— some physicians would know. They know that sometimes you just get this gut feeling about things, even when things are not going the way you want them to.
You’re not — you’re not doing it by the book, you feel like, well, just a little bit longer and just for — we have had cases like that, that did occur. We have gone the limit with some of the people and we didn’t always get the results that we were hoping to get. But, we’ll go along with them, perhaps we, by some standard, think that we should have with others and we did get good results. And I think that’s the basis for our continuing some of these — confining [sic] on some of these people longer than on others.
We think the Board’s conclusion that the petitioner had violated Tenn.Code Ann. § 63-6-214(b)(12) was based on substantial and material evidence found in the record and that the Board did not have to rely on its own expertise in arriving at that conclusion.
III.
The petitioner also alleges that the sections of the Code he was charged with violat *959 ing are too vague to apprise him of the precise nature of the allegations against him. As a result, he argues that the charges brought under the specific Code sections violate his right to due process as guaranteed by Article I, Section 8 of the Tennessee Constitution and the Fourteenth Amendment to the United States Constitution.
Since we have focused solely on § 63-6-214(b)(12) in this decision, we will deal with the constitutional question as it pertains to that section alone. As to the other two sections we specifically decline to express an opinion.
A statute is too vague to pass the constitutional test when “men of common intelligence must necessarily guess at its meaning and differ as to its application.” Leech v. American Booksellers Assoc., Inc., 582 S.W.2d 738 at 746 (Tenn.1979).
We think that Tenn.Code Ann. § 63-6 — 214(b)(12) is sufficiently clear to a person of ordinary intelligence to put him or her on notice as to what conduct is proscribed. It should be clear to anyone that giving stimulants to obese patients for long periods of time just to help them feel better is a dangerous practice. The statute passes the constitutional test.
The judgment of the court below is affirmed and the cause is remanded to the Chancery Court of Davidson County for the collection of costs in the court below and any other proceedings that may become necessary. Tax the costs on appeal to the appellant.
LEWIS and KOCH, JJ., concur.