IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 16, 2012 Session

# ERNEST B. KLEIER, JR., M. D. v. TENNESSEE BOARD OF MEDICAL EXAMINERS

### Appeal from the Chancery Court for Davidson County
### No. 10588II     Carol L. McCoy, Chancellor

---

### No. M2012-00463-COA-R3-CV - Filed January 9, 2013

---

A physician convicted of driving under the influence in another state was adjudged to have engaged in "unprofessional, dishonorable or unethical conduct", as proscribed by Tenn. Code Ann. § 63-6-214(b)(1), by the Tennessee Board of Medical Examiners; the Board placed the physician's medical license on probation and ordered him to obtain treatment and counseling. On petition for review, the Chancery Court held that the statute was unconstitutionally vague and reversed the Board's decision. We reverse, holding that Tenn. Code Ann. § 63-6-214(b)(1) provides sufficient notice to the physician that his conduct was subject to potential discipline by the Board.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed; Case Remanded

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Sara Elizabeth Sedgwick and William E. Young, Nashville, Tennessee, for the Appellant, Tennessee Board of Medical Examiners.

Daniel Davis Warlick, Nashville, Tennessee, for the Appellee, Ernest B. Kleier, Jr., M. D.

## OPINION

Dr. Ernest B. Kleier, Jr., is a physician licensed to practice in Tennessee; on July 6, 2008 he was arrested in Lake of the Ozarks, Missouri, for driving under the influence. He pled guilty to the misdemeanor charge on September 23, 2008. On September 22, 2009, the Tennessee Board of Medical Examiners ("the Board") issued a Notice of Charges, charging Dr. Kleier with unprofessional, dishonorable or unethical conduct, based on his guilty plea.

A hearing was held before a panel of the Board on January 27, 2010, at which Aaron Harrison, the state trooper who arrested Dr. Kleier, Kenneth Baker, owner and program director of Behavioral Treatment Providers, LLC, and Dr. Kleier testified.

On February 10, 2010, the Board issued its Final Order in which it made the following findings of fact:

> 2. On September 23, 2008, [Dr. Kleier] pled guilty to DUI, a misdemeanor in Missouri.
> 3. Blood alcohol contents that was drawn [from Dr. Kleier] over an hour after the [traffic stop] was .182, more than twice the legal limit.
> 4. The video evidence clearly shows that [Dr. Kleier] was impaired at the time of the [traffic stop]."

The Board concluded that Dr. Kleier had violated Tenn. Code Ann. § 63-6-214(b)(1).[1] The Board placed Dr. Kleier's medical license on probation for a term of two years, required him to "undergo an evaluation by the Vanderbilt Comprehensive Assessment Program ("VCAP") . . . within 90 days" and to "obtain and maintain the advocacy of the Tennessee Medical Foundation ("TMF") program for a period of not less than two (2) years[.]" The order provided that Dr. Kleier could, after a six-month period, petition the Board for an Order of Compliance to lift the probation of his license.

Dr. Kleier filed a petition for a rehearing in which he alleged that the Notice of Charges was impermissibly vague, that the requirement that he undergo an evaluation by an addiction assessment program was "not based on a foundation of factual evidence[,]" and that TMF had informed Dr. Kleier that "under the facts and circumstances of this case, [he] was not a proper candidate for inclusion in any TMF program." The petition was denied.

Dr. Kleier timely filed a Petition for Review of Agency Action in the Chancery Court pursuant to Tenn. Code Ann. § 4-5-322, in which he alleged that the Board's action in "placing his license on probation with conditions was arbitrary and capricious, made upon an unlawful procedure and is unsupported by evidence that is both substantial and material in the light of the entire record." On April 29, 2011, the Board filed its Brief on Judicial

---

[1] Tenn. Code Ann. § 63-6-214(a) grants the Board the power to discipline a physician upon any of the twenty-two grounds listed at § 63-6-214(b), including (b)(1) which proscribes "unprofessional, dishonorable or unethical conduct."

Review asserting that the Board's final order was supported by substantial and material evidence and was not arbitrary and capricious; oral arguments were heard on July 14, 2011.[2]

On January 23, 2012, the court issued a Memorandum and Order holding:

> [T]he charge against Dr. Kleier did not describe the minimally acceptable level of professional performance that he was required to meet or had failed to meet. . . . Nor did the charge filed against Dr. Kleier state the conduct that exemplified one or more of [the terms unprofessional, dishonorable or unethical].
> ***
> Absent some definition of the standard of care, the general terms in Tenn. Code Ann. § 63-6-214(b)(1) are impermissibly vague as is the charge brought against Dr. Kleier.

The court reversed the Board's decision.

The Board appeals and articulates the issues as follows:

1. The Chancellor erred by reversing the Board's Final Order placing Dr. Kleier's license on probation and requiring him to seek counseling to determine if he had an alcohol abuse problem and, if so, to obtain treatment.
2. The Chancellor erred in requiring the Board to articulate a standard of care, when the medical standard of care was not an issue in the specific disciplinary charge brought against Dr. Kleier under Tenn. Code Ann. § 63-6-214(b)(1) for unprofessional and dishonorable conduct.
3. The Chancellor erred by concluding that the general terms of Tenn. Code Ann. § 63-6-214(b)(1), as well as the charge brought against Dr. Kleier, were impermissibly void for vagueness and thereby violated constitutional due process standards.

## DISCUSSION

Disciplinary proceedings against medical licensees are conducted in accordance with the Uniform Administrative Procedures Act ("UAPA"). Tenn. Code Ann. § 63-6-216. Court review of UAPA proceedings is set forth at Tenn. Code Ann. § 4-5-322(h), which provides

---

[2] On September 23, 2011, the trial court granted Dr. Kleier permission to file a supplemental brief, which was filed on November 4. The Board filed its reply to the Supplemental brief on December 19.

that a court may modify or reverse the decision of an administrative agency if the agency's findings, inferences, conclusions or decisions are:

1) In violation of constitutional or statutory provisions;
2) In excess of the statutory authority of the agency;
3) Made upon unlawful procedure;
4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
5) (A) Unsupported by evidence which is both substantial and material in the light of the entire record.

This Court reviews an administrative decision under the same standard as the trial court. *Miller v. Tenn. Board of Nursing,* 256 S.W.3d 225, 229 (Tenn. Ct. App. 2007). When we review the decision of the trial court, we determine whether the trial court properly applied the standard of review found in Tenn. Code Ann. § 4-5-322(h). *See Jones v. Bureau of Tenn Care*, 94 S.W.3d 495, 501 (Tenn. Ct. App. 2002) (quoting *Papachristou v. Univ. of Tenn.*, 29 S.W.3d 487, 490 (Tenn. Ct. App. 2000)).

Construction of statutes is a question of law, which we review *de novo* without affording the trial court's decision any presumption of correctness. *Lovelace v. City of Knoxville*, No. E2000-01609-COA-R3-CV, 2001 WL 293001, at *4 (Tenn. Ct. App. March 27, 2001); *City of Jackson v. Shehata*, No. W2005-01522-COA-R3-CV, 2006 WL 2106005, at *4 (Tenn. Ct. App. July 31, 2006) (citing *City of Knoxville v. Entm't Res., LLC*, 166 S.W.3d 650, 655 (Tenn. 2005)).

The trial court held that "[a]bsent some definition of the standard of care or a violation of a specific standard of care or professional practice standard, the general terms in Tenn. Code Ann. § 63-6-214(b)(1) are impermissibly vague[.]" The Board contends that Dr. Kleier was given sufficient notice that the conduct for which he was being disciplined was "specifically prohibited as a violation of the Medical Practice Act" and, consequently, did not violate due process standards.

*Vagueness*

An individual's license to practice medicine is a constitutionally protected property interest which can be revoked, suspended or denied only upon proof of culpable conduct; absent such proof, a physician has a reasonable expectation that he or she will continue to hold the license. *Martin v. Sizemore*, 78 S.W.3d 249, 262–263 (Tenn. 2001). The property interest is protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Art. I, § 8 of the Tennessee Constitution. *Id.* It is fundamental to the

-4-

concept of due process that a statute does not provide the requisite notice to the individual "if its prohibitions are not clearly defined." *Davis-Kidd Booksellers, Inc. v. McWherter*, 866 S.W.2d 520, 531 (Tenn. 1993) (citing *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)).[3] A statute is too vague to satisfy the notice requirement when "men of common intelligence must necessarily guess at its meaning and differ as to its application." *Williams v. State Dept. of Health and Env't*, 880 S.W.2d 955, 958-59 (Tenn. Ct. App. 1994) (citing *Leech v. Am. Booksellers Assoc., Inc.*, 582 S.W.2d 738, 746 (Tenn. 1979)).

Of particular import to the case at bar is the following language from *Janeway v. State Bd. of Chiropractic Examiners*:

> The right to practice a lawful profession is a property right of which one cannot be illegally deprived. *State Bd. of Medical Examiners v. Friedman*, 150 Tenn. 152, 263 S.W. 75; *Prosterman v. Tennessee State Board of Dental Examiners*, 168 Tenn. 16, 22, 73 S.W.2d 687. But a license to practice a profession affecting the welfare of the public and, therefore, subject to the police power of the state is not a contract entitling the holder to continue the practice of his profession unrestricted and unregulated. *State Bd. of Medical Examiners v. Friedman*, *supra*. The Legislature unquestionably has the right in the exercise of the police power of the state to set up boards to investigate the practice of such a profession and to endow such boards with the right and duty to revoke for good cause a license previously granted.
>
> The power so delegated, however, can involve only a discretion as to when a proper occasion exists for executing the power. It cannot extend to the making of a new law. *State ex rel. Llewellyn v. Knox County*, 165 Tenn. 319, 331–332, 54 S.W.2d 973. And to avoid a violation of this principle we think it must be said that a revocation of a license to practice a lawful profession cannot be predicated on acts or conduct not specified in the statute or

---

[3] As noted in *State v. Lyons*:

The due process doctrine of vagueness also encompasses as a principal element the requirement that legislatures set reasonably clear guidelines for law enforcement officials and triers of fact to prevent arbitrary and discriminatory enforcement. A statute may be held vague on its face if it provides no legally fixed standards and leaves to the "personal predilections" of an officer, prosecutor, judge or jury the determination of the illegality of conduct.

802 S.W.2d 590, 591 (Tenn. 1990) (citations omitted).

embraced within its general terms. See to that effect *Graeb v. State Medical Examiners*, 55 Colo. 523, 139 P. 1099, 47 L.R.A.,N.S., 1063.

This does not mean, however, that in addition to providing specific grounds for revocation such boards may not be validly granted the power to revoke upon general grounds which, by common understanding and universally accepted standards, are regarded as dishonorable, disreputable or incompatible with the honest practice of the licensed profession and the public welfare. For example, charges involving such general grounds as 'unprofessional', 'dishonorable' or 'immoral' conduct and words of like general import in connection with the practice of the profession of medicine are frequently made the predicate for revocation of a license to practice that profession. See *Bell v. Board of Regents, etc.*, 295 N.Y. 101, 65 N.E.2d 184, 163 A.L.R. 900; Anno. 163 A.L.R. p. 909; 41 Am.Jur. 175.

231 S.W.2d 584, 587-88 (Tenn. Ct. App. 1950).

"Unprofessional conduct" has been defined by this court as "conduct that violates the rules or the ethical code of a profession or that is unbecoming a member of a profession in good standing[.]" *Baltrip v. Norris*, 23 S.W.3d 336, 340 (Tenn. Ct. App. 2000) (citing *Morris v. Clarksville-Montgomery County Consol. Bd. of Educ.*, 867 S.W.2d 324, 329 (Tenn. Ct. App. 1993)). The phrase is to be construed according to its "common and approved usage" with regard to the context in which it is used. *Morris*, 867 S.W.2d at 330. A statute which authorizes the revocation of a professional license for unprofessional acts or conduct "contemplates conduct that shows that the person guilty of it either is intellectually or morally incompetent to practice the profession or has committed an act or acts of a nature likely to jeopardize the interest of the public." 61 Am. Jur. 2d *Physicians, Surgeons, and Other Healers* § 77. The conduct in question "need not have occurred during the actual exercise of professional [medicine] skills," and yet it may still be an indication of "unfitness to practice medicine if it raises reasonable concerns" that the physician might harm members of the public or if the physician's conduct lowers the medical profession's standing in eyes of the public. *Id.* at § 78.

Tenn. Code Ann. § 63-6-214(b) lists twenty-two grounds upon which a Board may sanction a physician. Twenty-one of the grounds – (b)(2)-(22) – identify specific conduct or actions which may lead to discipline; the final ground, (b)(1), sets out a general standard of conduct for physicians.[4] All of the grounds in the statute seek to protect the physician and

---

[4] This court noted in *Tenn. Dep't. of Health v. Frisbee*, No. 01A01-9511-CH-00540, 1998 WL 4718

(continued...)

-6-

the public which the physician serves, are related to the practice of medicine and, thereby, subject to regulation by the Board. The Board could properly consider driving under the influence an act which could jeopardize the interest of the public, and be an indication of "unfitness to practice medicine[.]" *See* 61 Am. Jur. 2d § 77-78. This conduct involves the physician's judgment and may, under a given circumstance, raise reasonable concerns that the physician might harm members of the public and as to the physician's fitness to practice medicine. *Id.*[5]

In this manner, the term "unprofessional, dishonorable or unethical conduct" is adequate to advise Dr. Kleier that a conviction for driving under the influence could subject him to a proceeding before the Board to determine his fitness to practice and is not unconstitutionally vague.

*Standard of Care*

The Board next contends that the charge against Dr. Kleier did not involve a medical standard of care issue and, consequently, the trial court erred when it held that the Board was required to articulate a standard of care specific to the charge.

The court cited *Rich v. Tenn. Bd. of Medical Examiners*, 350 S.W.3d 919 (Tenn. 2011) for the proposition that Tenn. Code Ann. § 63-6-214(b)(1) requires "an understanding of relevant standards of care for conduct that relates to the performance of the function or duties of the doctor's profession[.]" The court held that "[Dr. Kleier's] unseemly conduct in another state was used as a platform for disciplining his professional license without describing how that conduct undercut the minimally acceptable level of professional competence expected of all physicians in Tennessee."

We do not read *Rich* to hold that the Board was required to articulate a medical standard of care in this case. *Rich* involved a disciplinary proceeding brought by the Board of Medical Examiners against a physician whose practice areas included chelation therapy,

---

[4](...continued)
(Tenn. Ct. App. Jan. 9, 1998), that Tenn. Code Ann. § 63-6-214(b)(1) requires "some consideration of professional practice standards."

[5] Pertinent to the case before us is Tenn. Code Ann. § 63-6-214(b)(5), which establishes as a ground for discipline "habitual intoxication or . . . the use of intoxicating liquors . . . in such manner as to adversely affect the person's ability to practice medicine." The fact that this specific ground relative to the use of intoxicating liquors by physicians was included as part of § 63-6-214 indicates that the inappropriate use of intoxicating liquors is a standard of conduct which could constitute "unprofessional, dishonorable or unethical" conduct within the meaning of § 63-6-214(b)(1).

-7-

hydrogen peroxide therapy, and the use of methadone to treat patients suffering from opioid dependency. The Board found that Dr. Rich committed acts which constituted grounds for discipline under Tenn. Code Ann. § 63-6-214(b)(1), (4), (12) and (14), 21 U.S.C. § 823(g)(1), and certain Board rules; the chancery court affirmed the Board's judgment in all respects. This court affirmed the Board's findings that Dr. Rich violated Tenn. Code Ann. § 63-6-214(b)(14), the Board rules and the federal statute; we determined, however, that with respect to the charges encompassed by Tenn. Code Ann. § 63-6-214(b)(1), (4) and (12), Tenn. Code Ann. § 63-6-214(g)[6] required the Board to articulate the applicable standard of care. Our Supreme Court granted the Board's application for permission to appeal and held that the Board was required to articulate the applicable standard of care in the course of its deliberations. *Rich*, 350 S.W.3d at 929. Significant to the ruling in *Rich* was the fact that the matters for which Dr. Rich was being sanctioned directly related to his diagnosis and treatment of patients; the inclusion of the general proscription at Tenn. Code Ann. § 63-6-214(b)(1) was ancillary to the more specific proscriptions at Tenn. Code Ann. § 63-6-214(b)(4)[7] and (12).[8]

---

[6] Tenn. Code Ann. § 63-6-214(g) states:

For purposes of actions taken pursuant to subdivisions (b)(4), (12) and (13) or any other subsection in which the standard of care is an issue, any Tennessee licensed physician serving as a board member, hearing officer, designee, arbitrator or mediator is entitled to rely upon that person's own expertise in making determinations concerning the standard of care and is not subject to voir dire concerning such expertise. Expert testimony is not necessary to establish the standard of care. The standard of care for such actions is a statewide standard of minimal competency and practice that does not depend upon expert testimony for its establishment. However, to sustain actions based upon a violation of this standard of care, the board must, in the absence of admissions or other testimony by any respondent or such respondent's agent to the effect that the standard was violated, articulate what the standard of care is in its deliberations.

[7] At the time *Rich* was decided, Tenn. Code Ann. § 63-6-214(b)(4) provided:

(b) The grounds upon which the board shall exercise such power include, but are not limited to:
* * *
(4) Gross malpractice or a pattern of continued or repeated malpractice, ignorance, negligence or incompetence in the course of medical practice;

The statute was amended by 2012 Pub. Acts, c. 798, § 37 to replace the word "malpractice" with "health care liability."

[8] At the time *Rich* was decided, Tenn. Code Ann. § 63-6-214(b)(12) provided:

(continued...)

The evidentiary standards applicable to alleged violations of Tenn. Code Ann. § 63-6-214(b) was before this court in *Tenn. Dept. of Health v. Frisbee*, No. 01A01-9511-CH-00540, 1998 WL 4718 (Tenn. Ct. App. 1998), wherein Dr. Frisbee was charged with having committed malpractice on six patients and performing twenty-two unnecessary surgeries; a violation of § 63-6-214(b)(1) was among the statutory grounds alleged. In the course of resolving the issue of whether expert testimony in disciplinary proceedings had to comply with the locality rule that is applicable in medical malpractice proceedings at Tenn. Code Ann. § 29-26-115, the court had occasion to discuss the standards of care applicable in disciplinary proceedings. Of particular relevance to the instant case we stated:

> Tenn. Code Ann. § 63-6-214(b) contains twenty [now twenty-two] grounds for disciplining physicians, but not all of these grounds require proof any particular standard of care. Thirteen disciplinary grounds require proof of specific inappropriate conduct, two grounds are general catch-all provisions, and five grounds [including § 63-6-214(b)(1)] require some consideration of professional practice standards. No statute requires the use of the same standard of care for all of the latter five grounds. In fact, there is no statutory direction of any sort concerning the standard of care applicable to any of these grounds.

*Frisbee*, at *4. In determining that the locality rule did not apply, we reiterated the distinction between the grounds at § 63-6-214(b) which specifically involve malpractice and those which do not. *Id*. at 6.

The proceeding before us involves the conviction of Dr. Kleier for an offense not directly related to the treatment he renders patients. No standard of medical care was required to be articulated by the Board and accordingly, the trial court erred when it so held.[9]

---

[8](...continued)

(b) The grounds upon which the board shall exercise such power include, but are not limited to:
* * *
(12) Dispensing, prescribing or otherwise distributing any controlled substance or any other drug not in the course of professional practice, or not in good faith to relieve pain and suffering, or not to cure an ailment, physical infirmity or disease, or in amounts and/or for durations not medically necessary, advisable or justified for a diagnosed condition;

[9] We also note that the court held in *Rich* that the failure of the Board to articulate a standard of care "did not warrant reversal of the Board's ruling that [the physician] had violated [Tenn. Code Ann. § 63-6-214(b)(1), (4), and (12)]." Rather the case was remanded for the Board to conduct deliberations and to
(continued...)

**CONCLUSION**

For the foregoing reasons, the judgment of the trial court is reversed and the decision of the Board of Medical Examiners affirmed. The case is remanded to the Chancery Court with instructions to remand the case to the Board for further proceedings in accordance with this opinion.

_____
RICHARD H. DINKINS, JUDGE

[9](...continued)
articulate the appropriate standard of care during its deliberations. *Rich*, at 928-29.